J. VALLDEJULI RODRÍGUEZ, peticionario y apelado, *v.* CARLOS M. DE CASTRO, en su carácter de ADMINISTRADOR DE LA CAPITAL DE PUERTO RICO, demandado y apelante.

Núm. 7544.—*Sometido:* Julio 12, 1937. *Resuelto:* Noviembre 17, 1937.

*Harry F. Besosa*, abogado del apelante; *J. Valldejuli Rodríguez*, por su propio derecho.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

El 27 de marzo el Administrador de la Capital, Carlos M. de Castro, escribió una carta a Juan Valldejuli Rodríguez informándole que el 30 de dicho mes sería dejado cesante en su cargo de abogado del Administrador. Posteriormente, con fecha 31 de marzo, el Sr. de Castro escribió otra carta retractando la primera e informando al señor Valldejuli que quedaba suspenso de empleo y sueldo por los siguientes motivos:

1. Porque de acuerdo con la sección 39 de la Ley 99 de 15 de mayo de 1931 al cesar en su cargo el Administrador de la ciudad que lo nombró a él, el Sr. Valldejuli quedaba automáticamente cesante.

2. Porque además, de acuerdo con la misma sección, le formulaba los siguientes cargos:

A. Falta de cordialidad y confianza.

B. Falta de respeto o injurias al Administrador de la Capital por parte del Sr. Valldejuli.

Más tarde, con fecha 2 de abril, el Administrador de la Capital agregó el siguiente cargo:

Negligencia inexcusable en el cumplimiento de sus deberes como abogado del Administrador de la Capital.

. El Sr. Valldejuli no contestó los cargos y el 5 de abril se celebró una vista en la que ambas partes adujeron prueba. En 8 de abril el Sr. de Castro, por resolución basada en la prueba aducida en dicha vista, dejó cesante al Sr. Valldejuli de su empleo. El 18 de mayo el Sr. Valldejuli radicó una petición de *certiorari* ante la Corte de Distrito de San Juan para revisar los procedimientos habidos en relación con su cesantía. El Sr. de Castro contestó oportunamente el auto y la corte de distrito resolvió el recurso en favor de Valldejuli, con costas, pero sin honorarios de abogado. Los fundamentos de la decisión fueron que la prueba sobre la negligencia del Lic. Valldejuli en el cumplimiento de sus deberes no era suficiente para justificar la cesantía, y en lo relativo a otros cargos, que no existían fundamentos legales para tal remoción.

El apelante señala doce errores que condensa en ocho cuestiones de derecho. La primera llamada cuestión de derecho se refiere a las conclusiones de hecho de la corte inferior. La corte de distrito en sus conclusiones de hecho dice lo siguiente:

" . . . El primer cargo es uno de carácter legal y no vemos cómo pueda imputársele a una persona como un cargo el que haya cesado" por ministerio de la ley. Pero el hecho es que el querellado no descansa en este precepto de ley para dar por terminados los servicios del postulante, sino que lo establece a manera de cargo y su resolución no la basa en que ya cesó el postulante en su empleo por haber cesado el funcionario que lo nombró, sino que funda su destitución por motivos de negligencia en el desempeño de las funciones del peticionario. El querellado ha escogido este remedio y nosotros no podemos apartarnos del círculo en que él se ha encerrado al resolver los cargos, y por ende, todo este procedimiento."

Refiriéndonos a la carta del Sr. de Castro, hallamos que ésta lee así:

"Señor:

"Refiriéndome a la comunicación que le envié con fecha 27 del corriente, notificándole que cesaría usted en su cargo de abogado y notario de la Capital en el día 30 de marzo de 1937, siento verme obligado a retirar la citada comunicación que le envié en los citados términos, por no expresar dicha comunicación todos los motivos para mi actuación en este respecto y en su lugar, hoy le notifico que queda usted suspendido de empleo y sueldo, por los siguientes motivos:

"1. Porque de acuerdo con la Ley número 99, aprobada en 15 de mayo de 1931, artículo 39, habiendo cesado don Jesús Benítez Castaño como Administrador de la Capital, que fué el que lo nombró a usted en 19 de marzo de 1937, automáticamente cesó usted como empleado de la Capital en esa misma fecha.

"2. Porque, además, de acuerdo con la misma ley y artículo, por la presente le formulo los siguientes cargos:

"A.   Por falta de cordialidad y confianza que debe existir entre el Administrador de la Capital y su abogado, así como también entre principal y empleado.

"B.   Por falta de respeto o injuria de usted al Administrador de la Capital.

"Los cargos A y B se confirman por los 'statements' que usted dió a la Prensa y que fueron publicados en 'El Mundo' en sus ediciones de los días 29 y 31 del corriente mes.

"Por las razones expuestas, queda usted desde esta fecha suspendido de empleo y sueldo, y se le señala el día 5 de abril de 1937, a las 2:00 P.M., en la oficina del Administrador de la Capital, para ser oído y tenga usted oportunidad de defenderse.

"Muy atentamente,

"(fdo.)     Dr. Carlos M. de Castro,
Administrador de la Capital."

La Corte de distrito cometió error al decir que el primer cargo presentado por el Sr. de Castro lo constituía el hecho de que Valldejuli fué dejado cesante en su empleo por disposición de ley. De la carta del Sr. de Castro se desprende claramente que éste dejó a Valldejuli cesante por dos *motivos*, y que al hacerlo así usó la forma alternativa: (1) O usted queda cesante por ministerio de ley, o (2) le formulo los siguientes cargos:

A.   .   .   .   .   .   .   .   .   .   .

B.   .   .   .   .   .   .   .   .   .   .

Parece claro que lejos de *renunciar* al hecho de que Valldejuli quedaba cesante por ministerio de ley, De Castro por el contrario trataba de estar doblemente seguro de su posición. Esto queda aclarado si nos referimos a la carta de De Castro. En su carta él dice: ''Queda usted suspendido de empleo y sueldo.''

Examinando la Ley número 99 de 1931 resolvemos que el único artículo que se refiere, o que puede considerarse como que crea el cargo de abogado, es el artículo 30 (Leyes de ese año págs. 627, 643), que lee así:

''El Administrador de la Capital representará a la Capital en todas las acciones oficiales, judiciales o extrajudiciales promovidas por o contra la Capital, en su capacidad corporativa y oficial, y en tal carácter el Administrador de la Capital podrá comparecer y sostener toda clase de derechos, acciones y procedimientos ante cualquier tribunal de justicia, organismo o funcionario. En ningún procedimiento o acción en que sea parte la Capital representada por el Administrador, podrá éste allanarse a la demanda o dejar de contestarla, ni someter dicha acción o procedimiento a arbitraje, sin el consentimiento previo de la Junta de Comisionados.''

Es aparente que este artículo impone al Administrador de la Capital el deber de representar la capital en las transacciones legales de cualquier índole, y si ha de estar o no representado por letrado es cuestión que se deja enteramente a él, proveyendo el artículo de manera específica: '' . . . . y en tal carácter el Administrador de la Capital podrá comparecer y sostener toda clase de derechos, acciones y procedimientos ante cualquier tribunal de justicia, organismo o funcionario.'' De suerte, pues, que si el Administrador de la Capital, en defensa de los mejores intereses de la ciudad, designa un letrado para que atienda a estos deberes, el letrado actúa entonces a nombre del Administrador de la Capital, toda vez que de acuerdo con la ley éste es el responsable del cumplimiento de los deberes de su cargo. En vista de esto sería aparente que la contención del apelante de que Valldejuli debía considerarse que quedó cesante por ministerio de ley

al renunciar el Sr. Benítez, es correcta, o por lo menos, que el nuevo Administrador de la Capital podría optar por no utilizar los servicios de dicho funcionario, de serlo. Si el letrado deriva su puesto del Administrador de la Capital y desempeña los deberes impuéstosle y de que es responsable el Administrador de la Capital, no puede haber duda alguna de que al expirar el término por el cual fué nombrado el Administrador, el letrado cesa automáticamente como tal o el Administrador puede poner fin a sus servicios. Esto resolvería el caso.

■ La segunda cuestión de derecho señalada por el apelante parece ser, sin embargo, conforme la presentan las partes, la más importante. El apelante alega que la corte de distrito cometió error al resolver que el recurso de *certiorari* era el procedimiento adecuado en casos de remoción de empleados. Para probar su aserto el apelante nos presenta la notable similitud existente entre el artículo 46 de la Ley 99 de 1931 (Leyes de ese año, págs. 627, 653) y el artículo 65 de la Ley número 11 de 1924 (Sesión Extraordinaria, pág. 77). El artículo 46 de la Ley número 99 de 1931 lee así:

"La Corte de Distrito de San Juan tendrá jurisdicción a instancia de parte perjudicada:

"(*a*) Para revisar o anular cualquier acto legislativo o administrativo de la Junta de Comisionados, de la Junta Administrativa o de cualquier funcionario de la capital que lesione derechos constitucionales de los querellantes o sea contrario a la Ley Orgánica y a las leyes de Puerto Rico, mediante *certiorari;*

"(*b*) Para suspender, mediante *injunction,* la ejecución de cualquier ordenanza, acuerdo, resolución u orden de la Junta de Comisionados, de la Junta Administrativa y cualquier funcionario de la Capital que lesione derechos garantizados por la Ley Orgánica o por las leyes insulares;

"(*c*) Para compeler mediante auto de *mandamus,* al cumplimiento de deberes ministeriales por los funcionarios de la capital;

"(*d*) Para conceder, mediante juicio ordinario, compensación de daños y perjuicios a los perjudicados por actos u omisiones de los funcionarios de la capital por malicia, negligencia o ignorancia inexcusables."

Las únicas diferencias existentes entre el anterior y el artículo 65 de la Ley número 11 de 1924 son aquéllas que pueden atribuírse a los fines últimos de las leyes mismas. La Ley número 11 de 1924 es una ley para establecer gobiernos locales y por tanto habla de "alcalde", "asamblea municipal", "cortes de distrito" y "demás funcionarios municipales". La Ley número 99 de 1931, siendo una ley para establecer un gobierno especial para la Capital de Puerto Rico, habla en su consecuencia de "Junta Administrativa", "Junta de Comisionados", "Corte de Distrito de San Juan" y "de cualquier funcionario de la Capital".

En vista de esto, somos de opinión de que las decisiones con respecto a la ley de 1924 son aplicables a la ley de 1931.

Si aceptamos esta premisa nos encontramos varias decisones sobre la Ley 11 de 1924 que sostienen que el *certiorari* no es el procedimiento adecuado para investigar y apreciar la prueba aducida en una vista pública celebrada en torno a la remoción de un funcionario municipal.

En el caso de *Coll* v. *Todd,* 35 D.P.R. 625, 626, este tribunal resolvió lo siguiente:

"Estamos algo inclinados a convenir con el apelado que un *certiorari* de acuerdo con la Ley Municipal no es el modo de revisar el acto de un alcalde al destituir un empleado municipal. . .

"Suponiendo, sin embargo, que el *certiorari* sea el remedio adecuado, ¿cuál es el deber de la corte? A lo sumo revisar el procedimiento para ver si hay algo que justifique la acción del funcionario que destituyó al peticionario. Normalmente el funcionario con poder para destituir es el único juez de la prueba y el deber de la corte es ver si hay una absoluta falta de prueba que justifique la destitución o algo similar. *Castro* v. *Tesorero,* 34 D.P.R. 199; 5 R.C.L. 263–4."

En *Rivera* v. *Asamblea Municipal,* 39 D.P.R. 79, 81, dijimos:

"La misma situación jurídica que en el caso de Coll, supra, existe en éste. Podríamos detenernos aquí y revocar la sentencia recurrida. Sin embargo, como en el caso de Coll, seguiremos adelante en nuestro estudio."

Luego en el curso de la opinión expresamos (pág. 84):

"Tanto por no ser el *certiorari* el procedimiento adecuado cuanto por no haberse presentado un verdadero caso ante la corte, debe revocarse la sentencia. . ."

En *Fernández Vanga* v. *Pavía, Alcalde,* 42 D.P.R. 768, 774, este tribunal decidió lo siguiente:

"Hemos entrado en los méritos del asunto tales como surgen del récord, pero ni aun eso era necesario hacer ya que como dijimos en el caso de *Coll* v. *Todd,* 35 D.P.R. 625, y repetimos en el de *Rivera Aromí* v. *Asamblea Municipal,* 39 D.P.R. 80, el destituir a un funcionario, aun sin justa causa, no cae dentro de las disposiciones de la Ley Municipal autorizando el ejercicio del auto de *certiorari.*"

■■ La tercera cuestión de derecho presentada por el apelante, en tanto en cuanto sea necesario examinarla, es si la corte de distrito se excedió en su jurisdicción al analizar la suficiencia de la prueba y al revisar la resolución del Sr. de Castro. Esto, a nuestro juicio, puede contestarse refiriéndonos de nuevo al caso de *Coll* v. *Todd,* supra, en el cual este tribunal dice en efecto:

"Suponiendo, sin embargo, que el *certiorari* sea el remedio adecuado, ¿cuál es el deber de la corte? A lo sumo revisar el procedimiento para ver si hay *algo* que justifique la acción del funcionario que destituyó al peticionario. Normalmente el funcionario con poder para destituir es el *único juez* de la prueba y el deber de la corte es ver si hay una absoluta falta de prueba que justifique la destitución o algo similar. . ."

El apelante indica, y estamos de acuerdo, que en ausencia de alguna limitación estatutaria, el poder de dejar cesante es incidental al poder de hacer nombramientos. *Ex Parte Hennen,* 13 Peters, 230; *Shurtleff* v. *United States,* 189 U.S. 311; *Burnap* v. *United States,* 252 U.S. 512, 515, y casos citados; *Clayton* v. *Utah Territory,* 132 U.S. 632; Dillon on Municipal Corporations, párrafos 462 y 473; 22 R.C.L. 562; 46 Corpus Juris 985.

Conforme hemos indicado, nada hay en la ley que reglamente la designación de un letrado ni tampoco se convierte

a éste en funcionario o empleado por ninguna de las leyes de Puerto Rico. Por tanto, como el poder de dejar cesante puede considerarse como absoluto, no es necesario tomar en consideración la vista celebrada. La teoría adecuada, según hemos indicado, es que el Sr. de Castro tenía discreción para designar o no a un letrado, e igualmente para poner fin a los servicios de dicho letrado cuando así lo creyere prudente.

La cuarta cuestión de derecho presentada por el apelante es que la corte de distrito cometió error al estimar que el *quo warranto* no es el remedio adecuado cuando un empleado ha sido removido y otro puesto en su lugar. Esta cuestión podría ser pasada por alto, toda vez que la corte de distrito no tuvo que resolver el punto. El apelante alegó ante la corte de distrito que el *certiorari* no era el recurso adecuado en este caso y que el peticionario debió haber acudido al *quo warranto*. Esa era la contención del apelante, mas la única cuestión que la corte de distrito tenía que resolver fué si el *certiorari* era o no el recurso adecuado.

La quinta cuestión legal presentada por el apelante también podría ser ignorada. Ella nos retrotrae a la petición, en la cual el peticionario hace ciertas observaciones personales y quizá desdorosa para el Sr. de Castro. El apelante alega que tales observaciones no debieron ser pasadas por alto por la corte de distrito, toda vez que tendían a probar precisamente la falta de cordialidad imputádale al apelado. Empero, el apelante pasa por alto el hecho de que la corte de distrito no estaba oyendo los cargos en sí, sino que meramente revisaba el proceder adoptado como resultado de dicha vista.

Como sexta cuestión de derecho el apelante alega que la corte de distrito cometió error al concluir que en las relaciones entre abogado y cliente se requiere una preponderancia de prueba para demostrar que ha habido negligencia.

Nos parece que la contención del apelante de que un cliente tiene derecho a terminar las relaciones con su letrado en cual-

quier momento, con o sin razón específica, es tan correcta que no admite discusión.

La séptima cuestión de derecho planteada por el apelante se refiere a la aplicación de la doctrina del caso de *Gil* v. *Chardón,* 41 D.P.R. 210, 'que se refiere al status de un empleado dentro del Servicio Civil y su superior. En vista del hecho de que en este caso la controversia ha surgido entre un abogado y su cliente, somos de opinión de que la contención del apelante es correcta y que la doctrina de aquel caso no es aplicable al presente.

La octava cuestión legal aducida por el apelante se refiere a los defectos de la sentencia de la corte inferior.

En su moción para desestimar el recurso el apelado expone cuatro fundamentos, a saber:

1. Porque la apelación se hizo académica, toda vez que el cargo de abogado fué abolido por la Junta de Comisionados.

2. Porque el escrito de apelación no fué notificado al Sr. Valldejuli y porque el juramento prestado por Mario Mirabal, Jr., es nulo toda vez que él es un empleado del Sr. Besosa, quien está personalmente interesado en el cargo.

3. Porque no existe el recurso de apelación contra la decisión de la corte de distrito, ya que la ley número 99 de 1931 es una de carácter especial y no concede el derecho de apelación.

4. Porque no se desprende de la faz del escrito de apelación que el mismo fuera radicado en la oficina del secretario de la corte que dictó la sentencia.

En nuestra opinión, el recurso no es enteramente académico, puesto que la corte de distrito concedió costas al peticionario y además, según alega el apelante, porque existe la cuestión relativa al pago del sueldo del abogado durante los meses de abril, mayo y junio. También parecería existir la cuestión de moral pública para la ciudad envuelta en el litigio, ya que durante los meses de abril, mayo y junio tanto el Sr. Valldejuli como el Sr. Besosa alegan haber estado actuando como abogados del Administrador de la Capital. A la Capital

le interesa que la cuestión relativa a quién ostentaba realmente su representación y quién actuaba sin autoridad sea resuelta.

█ Como segundo motivo para solicitar la desestimación el apelado alega no haber sido notificado del escrito de apelación, puesto que según el juramento de Mario Mirabal, copia del escrito fué dejada en el bufete de Valldejuli en poder del secretario de éste. Valldejuli sostiene que esta notificación es irregular, ya que no tenía secretario para aquella época. Sin embargo, como según el artículo 320 del Código de Enjuiciamiento Civil cuanto es estrictamente necesario es dejar copia del escrito de apelación en la oficina del letrado, si éste se halla ausente, el hecho relativo a si la persona a quien se le entregó era o no secretario del abogado, no parece tener gran importancia. Al mismo tiempo Valldejuli no niega que el escrito fuera dejado en su oficina, y según la Regla 75 de este tribunal, la declaración jurada de la persona que haga la entrega constituirá la prueba de la misma.

La contención del apelado de que la notificación del escrito de apelación era nula porque Mario Mirabal era empleado del letrado del apelante carece de fundamento.

█ La cuestión respecto a si puede o no apelarse de la sentencia ha sido ya resuelta en *Coll* v. *Todd,* supra, donde se dice:

"Los artículos 292 y 50 del Código de Enjuiciamiento Civil autorizan apelación contra las sentencias dictadas por las cortes de distrito en los casos de *certiorari* presentados de acuerdo con la sección 65 de la Ley Municipal."

█ Como cuarto motivo para solicitar la desestimación el apelado alega que el escrito de apelación no demuestra en su faz haber sido notificado al secretario y radicàdo en la secretaría. Sin embargo, en los autos el secretario de la corte de distrito certifica que todos lós documentos allí copiados han sido radicados en su oficina. Como la notificación forma parte de los autos certificados por el secretario de la corte de distrito,

no nos parece que el alegado error en los autos sea motivo suficiente para desestimar un recurso.

Por las razones anteriores se revoca la sentencia apelada que dictó la corte inferior en este caso y se anula el auto de *certiorari* por ella expedido.

El Juez Asociado Señor Córdova Dávila no intervino.