Esteban Díaz, querellante y apelado, *v.* Efigenio Charneco, querellado y apelante.

No. 4.—*Sometido:* Abril 8, 1935. *Resuelto:* Mayo 22, 1935.

---

* Nota: Véase el prefacio.

*Juan B. Soto,* abogado del apelante; *Leopoldo Tormes García,* abogado del apelado; *Luis A. Rosario,* abogado de la Asamblea Municipal.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Éste es un procedimiento sobre destitución de un Alcalde, seguido de acuerdo con el artículo 29 de la Ley Municipal de 1928, tal como quedó enmendado por la Ley No. 98 de 1931, Leyes de 1931, p. 609.

Esteban Díaz, ciudadano, formuló acusación contra Efigenio Charneco, Alcalde de Aguada, ante la Asamblea Municipal de dicho pueblo el 9 de febrero de 1935. Convocada la Asamblea por su Presidente a sesión especial para el 12, acordó tomar jurisdicción sobre el asunto, suspender de empleo y sueldo al Alcalde, ordenar la notificación de los cargos al mismo concediéndole hasta el 19 para contestarlos y señalar la vista para dicho día.

Solicitó prórroga el Alcalde y le fueron concedidos cinco días, señalándose la vista para el 25. Excepcionó y contestó la querella el querellado y reunida la Asamblea el 25 de febrero último comparecieron ante ella en persona y por medio de abogado el querellante y el Alcalde. Se practicó prueba documental y testifical. Los procedimientos, incluso la evidencia, se tomaron taquigráficamente.

Terminado el juicio, la Asamblea nombró un comité de

ponencia compuesto de tres miembros de la misma para dictaminar sobre la evidencia y cuestiones suscitadas y, de acuerdo con su informe, concluyó que los cargos habían quedado satisfactoriamente probados, declaró al Alcalde culpable de conducta inmoral y contraria a la ley y lo separó definitivamente de su puesto.

No conforme el Alcalde apeló para ante esta Corte Suprema radicando su escrito notificado a la Asamblea el 6 de marzo último. Acto seguido el tribunal requirió a la Asamblea para que enviara dentro de cinco días el récord conteniendo todo lo actuado. El término fué extendido hasta el 18 de marzo y el 13 la Asamblea radicó el récord certificado que contiene unas ciento cuarenta páginas.

El apelante archivó su alegato el 3 de abril y el querellante el suyo el 5. El de la Asamblea se radicó el 8, día en que tuvo lugar la vista del recurso con la comparecencia del apelante, del querellante y de la Asamblea por medio de sus respectivos abogados. Impugnó el apelante la intervención del querellante y la corte desestimó su impugnación. Y así el caso quedó definitivamente sometido a la consideración y resolución de la corte.

■■ El apelante sostiene que su excepción previa fué declarada sin lugar erróneamente y que la resolución final de la Asamblea no está sostenida por la prueba, es contraria a la ley y revela pasión, prejuicio y parcialidad.

La acusación contiene seis cargos. Los cinco primeros son de igual naturaleza. Se alegó en ellos substancialmente que el querellado siendo Alcade de Aguada y actuando como tal ilegal, voluntaria y maliciosamente en tres ocasiones distintas adquirió ciertos efectos con cargo a los fondos del municipio para el Hospital Municipal y en otras dos ordenó ciertos trabajos para el municipio con cargo a sus fondos, sin cumplir en ninguna de ellas con los requisitos legales de orden escrita, montante de la compra o servicio, aprobación del Director Local de Beneficencia en los tres primeros casos,

certificación de la necesidad del gasto y certificación de crédito suficiente por parte del Secretario-Auditor Municipal, violando así el artículo 93 del Código Penal, habiendo sido por ello denunciado ante la Corte Municipal de Aguadilla que lo declaró culpable por cinco separadas sentencias, imponiéndole multas de cinco dólares que el acusado pagó quedando los fallos firmes.

En su contestación el Alcalde se limitó a negar que los hechos que se le imputaban fueran realizados voluntaria, o ilegal, o maliciosamente, alegando luego que realizó los mismos a instancias del Secretario-Auditor Municipal que le manifestaba que podía dar la orden verbal pues él tenía preparados los documentos requeridos por la ley y los reglamentos que oportunamente le presentaría para su firma, habiendo luego el querellado formulado cargos contra el dicho Secretario-Auditor al quedar convencido del engaño y obtenido su cesantía.

Se presentaron en evidencia copias de las sentencias firmes de la corte municipal y el Alcalde no aportó prueba en relación con la alegada defensa o explicación de su conducta. Los cinco primeros cargos quedaron de tal modo comprobados.

La sexta y última imputación que se hizo al alcalde fué substancialmente la de haber comprado provisiones para el hospital municipal para pagarse con fondos del municipio en cierto establecimiento mercantil en el que estaba directamente interesado, simulando que el contrato se realizaba con otra persona.

Para probar el cargo se aportó evidencia documental y testifical. La hemos estudiado cuidadosamente y a nuestro juicio demuestra la verdad de la imputación. No obtante los grandes esfuerzos que el abogado del apelante hace en su alegato para impugnar el valor probatorio de la evidencia y en todo caso su suficiencia, la impresión que produce su lectura independiente en la conciencia del juzgador, perdura.

Convence de que el establecimiento de que se trata era del Alcalde, o por lo menos de que el Alcalde estaba directamente interesado en el mismo.

Habiendo llegado a las anteriores conclusiones, veamos ahora si hubo justa causa para la destitución.

La Ley Municipal dispone—artículo 29 ya citado—que los alcaldes podrán ser destituídos por las asambleas municipales mediante resolución adoptada por la mayoría del número total de sus miembros, "por causa justificada, previa audiencia y oportunidad de defenderse".

La audiencia y la oportunidad de defenderse las tuvo plenas el Alcalde en este caso. Los procedimientos ponen de manifiesto la celebración de un juicio con todas las garantías de la ley.

Con respecto a lo que se entiende por justa causa se cita en los alegatos un buen número de decisiones todas dignas de estudio. La jurisprudencia sobre el particular es abundantísima y en líneas generales aparece bien resumida en 46 C. J. 986, así:

" 'Causa' que sea suficiente para autorizar la remoción de una persona de un cargo significa causa legal. La causa debe ser una que se relacione especialmente y que afecte la administración del cargo y debe limitarse a algo de naturaleza substancial y que afecte directamente los derechos e intereses del pueblo."

Y en *Words & Phrases Judicially Defined,* volumen 2, pág. 1009, encontramos:

"Una causa que sea suficiente para autorizar la remoción de su cargo de un funcionario municipal significa causa legal y no cualquier causa que la asamblea pueda considerar suficiente. La causa debe ser una que se relacione especialmente y que afecte la administración del cargo y debe limitarse a algo de naturaleza substancial y que afecte directamente los derechos e intereses del pueblo. La causa debe tener íntima relación con la idoneidad del funcionario o con el desempeño de sus deberes, demostrativa de que él no es una persona apropiada para el cargo."

Guiados por la luz de la ley y la jurisprudencia, examinemos los hechos concretos de este caso. Los cinco primeros cargos constituyen violaciones que quizá pudieran considerarse como técnicas, pero que es necesario reconocer que lo son de preceptos legales y reglamentarios previamente establecidos y directamente relacionados con el ejercicio del cargo.

Fueron dichas violaciones primeramente juzgadas por la vía judicial. Se imputaron al Alcalde cinco *misdemeanors* dictándose cinco sentencias condenatorias que el acusado acató.

Quizá la comisión de una o de dos de ellas, demostrada predominantemente la honestidad del funcionario, no hubieran aportado causa suficiente para la destitución. Pero se trata de cinco que revelan un abandono completo de la ley y los reglamentos, una violación sistemática de sus disposiciones que si bien crean en ocasiones anormales dificultades, se han ideado y puesto en vigor para garantizar los intereses públicos, y deben cumplirse.

Y en cuanto al sexto cargo no se trata ya de haberse dejado de cumplir con algún requisito legal o reglamentario, sino de la realización de un acto prohibido por la ley, constitutivo de delito. Artículos 202 y siguientes del Código Político en relación con el 86 del Código Penal.

Se ha insinuado que la situación de los fondos del municipio era tan precaria, que el Alcalde lo que realizaba eran actos de bien para con los enfermos del hospital y los funcionarios a quienes les proporcionaba la única oportunidad que tenían de percibir algo inmediato por sus servicios.

Quizá sea ello así, pero el procedimiento no puede aceptarse porque se prestaría a entronizar la inmoralidad administrativa a título de bondad y expedición. Cuando surgen crisis de tal naturaleza deben vencerse afrontándolas vigorosamente, exponiendo acto seguido la entera verdad que entrañan para adoptar de una vez las medidas que puedan conjurarlas y no recurriendo a medios indirectos que contribuyen a convertirlas de epidémicas en endémicas.

Ya esta Corte Suprema se confrontó con una situación semejante en *Pueblo Ex rel, Pérez* v. *Manescau,* 33 D.P.R. 739, 741, y dijo:

"Que la celebración de un contrato por un funcionario público expresamente prohibido por la ley y claramente contrario a la política pública, constituye una violación de un deber oficial capaz de producir la pérdida del cargo, nos parece evidente. No se trata de una violación inconsciente o de escasa importancia o trascendencia. Desde el momento que se acudió a una simulación para eludir el mandato de la ley, quedó de manifiesto la intención deliberada de infringirla."

El cargo imputado a Manescau consistía en haber arrendado una casa de su propiedad al municipio de cuya asamblea era miembro, traspasando la casa simuladamente a otra persona.

Por virtud de todo lo expuesto, tratándose de hechos que se relacionan directamente y envuelven la administración del cargo de Alcalde, de naturaleza substancial el último y por su repetición los cinco primeros, y afectantes todos a los intereses públicos, *debe declararse sin lugar la apelación, quedando confirmada la resolución recurrida.*