Carlos M. de Castro, peticionario y apelante, *v.* Junta de Comisionados de San Juan, querellada y apelada.

Núm. 8070.—*Sometido:* Enero 17, 1940. *Resuelto:* Junio 28, 1940.

R. *Rivera Zayas, Damián Monserrat, Jr.,* y *Gabriel de la Haba,* abogados del apelante; *J. Valldejuli Rodríguez* y *R. Díaz Collazo,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

Pedro Ramírez Nadal formuló cargos a Carlos M. de Castro, Administrador de la Capital, ante la Junta de Comisionados del Gobierno de la Capital. En noviembre 10 de 1938 la Junta hizo suyos los cargos y residenció *(impeached)* al Administrador de la ciudad. Éste fué debidamente notificado y contestó. En 21 de noviembre de 1938 comenzó una vista pública y la misma se prolongó durante varias sesiones. El 5 de enero de 1939 el Administrador fué suspendido de su empleo. La vista continuó hasta el 17 de febrero. El 5 de abril el Administrador fué removido de su cargo.

Se presentaron diecinueve cargos contra el Administrador de la Capital. Éstos estaban numerados V a XXIII. Los párrafos I a IV se dedicaron a la exposición de motivos de los cargos. Se presentó prueba sobre siete de ellos. De suerte, pues, que el juicio comenzó nominalmente sobre todos los diecinueve cargos. El Administrador fué a juicio, podría presumirse, sin saber al principio específicamente cuáles de los cargos serían presentados. Decimos esto ahora por varias razones, una de las cuales es que el apelante ante este tribunal sostiene que ninguno de los cargos formulados constituía la alegación suficiente para una destitución por justa causa. La apelada, por otra parte, sostiene que todos

los cargos eran suficientemente específicos y que el querellado no necesitaba ningún aviso ulterior. Si cualquiera de los diecinueve cargos era suficiente para justificar la remoción del Administrador de la Capital, entonces debió haberse tenido gran cuidado en su redacción. Si, por otra parte, los cargos han de ser considerados en su totalidad, entonces es cuestión muy debatible el hecho de si la corte inferior pudo o no considerarlos conjuntamente para ver si en todos ellos había lo suficiente para justificar la destitución. Tuvimos una seria duda en torno a si el cargo principal en que se fundaron la apelada y la corte inferior, es decir, el supuesto estado desastroso del acueducto de San Juan, constituye la justa causa a que se refiere la ley.

Discutiremos ahora los cuatro cargos que fueron finalmente presentados en la Corte de Distrito de San Juan.

El cargo número X dice:

"Allá por el día 24 de noviembre de 1937 un tal José Torres Silva, empleado del Gobierno de la Capital, mientras estaba en completo estado de embriaguez, disparó dos tiros de revólver en la oficina de pagaduría del Ayuntamiento de la Capital mientras se encontraba en el desempeño de su empleo, habiendo llegado el hecho a conocimiento de dicho Carlos M. de Castro sin que procediera sobre dicha actuación del señor Torres Silva."

La Junta resolvió:

"Por cuanto, aparece de la evidencia testifical ofrecida tanto en apoyo de los cargos como de aquélla presentada por el querellado y, especialmente del testimonio del *City Manager* y de José Torres Silva, que la imputación comprendida en el apartado X de la querella, constituye negligencia por parte del *City Manager* y que la actitud de éste está muy lejos de ser la 'buena conducta' de que habla la Ley Orgánica de este Gobierno, y por el contrario, la actitud y palabras del *City Manager* en relación con el incidente que comprende dicho cargo constituyen claramente una inexcusable 'conducta inmoral e incorrecta' tal como se señala en dicha ley."

El cargo número XII lee:

"Allá por el día 2 de octubre de 1937 en el caso de un accidente sufrido por el automóvil GM 201, propiedad de la Capital, causado

por la negligencia de José Marcos Morales, empleado del Gobierno de la Capital, según se había resuelto por el Auditor de la Capital, el referido Carlos M. de Castro, en su carácter de Administrador de la Capital (*City Manager*) requirió al Auditor de la Capital personalmente y por mediación de la Directora Escolar para que archivara el caso; a sabiendas de que su archivo sería ilegal y en contra de los intereses de la Capital. Dicho José Marcos Morales era un empleado bajo el cargo directo de dicho Carlos M. de Castro en su carácter de Administrador de la Capital (*City Manager*).

"En este caso dicho Carlos M. de Castro, en su referido carácter y en su oficina en la casa-alcaldía de la Capital, amenazó, tratando de atemorizarlo, a dicho Auditor para que transara dicho caso, todo en contra de los intereses de la Capital."

La Junta dijo:

"Por cuanto, aparece de la prueba testifical que la conducta del *City Manager* en el incidente específico a que se contrae y que se describe bajo el apartado XII del pliego de cargos, deja de ser a todas luces la 'buena conducta' que señala la Ley creando este Gobierno de la Capital, y por el contrario, las actuaciones del *City Manager* constituyen una violación de las obligaciones que el estatuto impone al *City Manager* y están comprendidas en la expresión 'conducta inmoral e incorrecta' que determina la ley citada."

El cargo número XXII expresa:

"El referido Carlos M. de Castro en su referido carácter no ha tomado las medidas necesarias para hacer cumplirse las ordenanzas del Gobierno de la Capital, a saber:

"1. La Ordenanza Núm. 249, tal como se ha enmendado. 2. La Ordenanza Núm. 360; 3. La Ordenanza Núm. 364; 4. La Ordenanza Núm. 367; 5. La Ordenanza Núm. 369; 6. La Ordenanza Núm. 371; 7. La Ordenanza Núm. 380; 8. La Ordenanza Núm. 385; 9. La Ordenanza Núm. 393; 10. La Ordenanza Núm. 394; y varias otras de las Ordenanzas de la Capital."

La Junta manifestó:

"Por cuanto, ha quedado plenamente demostrado por la prueba documental ofrecida, por el testimonio del Secretario de esta Junta Sr. Luis A. Castro, y por el testimonio del propio *City Manager*, que éste, de una manera voluntaria, adrede, sistemática y negligentemente dejó de dar cumplimiento, sin excusa legal o moral alguna,

a sabiendas e ignorando el mandato expreso de esta Junta, a las obligaciones y deberes impuéstosle por las Ordenanzas Núms. 360, 367, 371 de esta Junta, adoptando así una actitud contraria a la buena conducta prescrita por la Ley del Gobierno de esta Capital e incurriendo en la conducta 'inmoral e incorrecta' que señala dicha ley.''

El cargo número VI provee:

''El referido Carlos M. de Castro en el desempeño de su cargo como Administrador de la Capital (*City Manager*) no ha inspeccionado ni ha administrado el sistema de Acueducto de la Capital que suministra agua a la Capital y a los municipos de Bayamón y Cataño y en parte al municipio de Río Piedras, ni lo hace en la actualidad. Ha permitido y permite Carlos M. de Castro en su dicho cargo que la planta física de dicho sistema, incluyendo las represas, plantas de filtración, tubería, las válvulas y otros aparatos, cayeran en un estado de abandono y desorganización. Ha permitido y permite que estuviera contaminada el agua suministrada por dicho sistema y consumida por los referidos pueblos de tal modo que ha amenazado y amenaza la salud pública y el bienestar público.

''Debido a tal estado de abandono y desorganización, el abastecimiento de agua ha sido interrumpido en varias ocasiones y existe la amenaza de que dicho abastecimiento en cualquier momento pueda ser interrumpido.

''Debido a tal desorganización en la administración del sistema de acueducto, la Capital no ha podido cobrar ni cobra por el agua suministrada a muchos de los consumidores, y Carlos M. de Castro ha permitido y permite que muchos consumidores hayan utilizado y utilicen el servicio de agua sin pagar por tal servicio.

La Junta dijo:

''POR CUANTO, la prueba documental ofrecida, tanto en apoyo de la querella como en su descargo por parte del querellado, y la prueba testifical y pericial sometidas asimismo para justificar el cargo comprendido en el apartado 6 de la querella, incluyendo la evidencia de igual naturaleza sometida por el querellado, demuestran sin lugar a dudas que el *City Manager* incurrió en negligencia y adoptó una actitud altamente perjudicial a los intereses de la comunidad de esta Capital, no dando atención a y por el contrario ignorando las reiteradas observaciones que verbalmente y por escrito le hicieran las autoridades del Departamento de Sanidad Insular en relación con la contaminación del agua para el consumo público,

ni dando atención a las repetidas observaciones y requerimientc héchosle por varios empleados de este propio Gobierno de la Capital en el sentido dicho, demostrando con todo ello que no ha observadc la 'buena conducta' de que habla la ley creando el Gobierno de la Capital e incurriendo también en abandono y en 'conducta inmoral e incorrecta'; y—Por cuanto, esta Junta entiende que por las razones, fundamentos y hechos que se dejan anteriormente expuestos y relacionados, existe justa causa para destituir al *City Manager* por abandono, negligencia inexcusable y conducta inmoral e incorrecta en el desempeño de su cargo. . . .''

Él 11 de abril de 1939 el Administrador de la Capital acudió a la Corte de Distrito de San Juan en solicitud de un auto de *certiorari,* que fué expedido. Se celebró una vista el 1°. de junio de 1939. Se dictó sentencia el 21 de agosto de 1939 anulando el auto expedido. El apelante señala, desde luego, varios errores que creemos innecesario discutir en determinado orden.

■■ En realidad, gran parte de la discusión en la corte inferior y en los alegatos del apelante fué al efecto de que el artículo 22 de la Ley núm. 99 de 1931 (leyes de! ese año, págs. 627, 639) tan sólo permite la formulación de cargos por la comisión de delitos graves o menos graves. Este artículo lee en el idioma castellano así:

''El Administrador de la Capital podrá ser destituído por la Junta de Comisionados por justa causa, previa audiencia y oportunidad para defenderse por sí o mediante abogados. Serán causas para destituir al Administrador de la Capital: cualquier acto realizado por él que constituya un delito grave (*felony*); cualquier acto realizado por él que constituya un delito menos grave (*misdemeanor*) y que implique depravación moral, abandono, negligencia inexcusable en el desempeño de su cargo, o conducta inmoral e incorrecta en el desempeño del mismo.''

Toda vez que la ley fué redactada en el idioma español, el texto castellano debe prevalecer. La versión inglesa dice así:

''The City Manager may be removed by the Board of Commissioners, for just cause, upon hearing and an opportunity to defend

himself either in person or through attorneys. The following shall be causes for the removal of the City Manager: any act of his constituting a felony; any act of his constituting a misdemeanor and implying moral turpitude; or careleness, inexcusable negligence in the performance of his duties, or immoral or incorrect conduct in the exercise thereof.''

La corte inferior resolvió que además de delitos graves y menos graves el Alcalde podía ser residenciado por negligencia inexcusable en el desempeño de su cargo. El efecto de la decisión de la corte fué seguir el texto literal de la versión inglesa más bien que el de la española, más estamos contestes en que debió haber sido la intención de la Asamblea Legislativa que la negligencia inexcusable constituyera también causa de destitución. De ese modo leían ambas versiones de leyes anteriores al permitir que se revisara por *certiorari* la destitución de funcionarios subalternos. Creemos que en el texto castellano la conjunción "y" después de la palabra *"misdemeanor"* debe leerse como "o", toda vez que cualquiera otra interpretación de la ley conduciría a un absurdo.

Estas conclusiones son sostenidas por el artículo 21 de la Ley núm. 99, que lee así:

''El Administrador de la Capital será el jefe ejecutivo de la misma, será nombrado por la Junta de Comisionados que se crea por esta Ley y desempeñará su cargo mientras observe buena conducta.''

No es menester que demos demasiado énfasis a este punto porque, asumiendo que nuestra conclusión y la de la corte inferior sean correctas, el caso debe ser revocado por otros motivos.

█ La corte de distrito resolvió que los cargos X y XII no habían sido probados. No hallamos motivo alguno para impugnar la corrección de este resultado, especialmente no habiéndola impugnado la apelada.

█ Al considerar los cargos XXII y VI la corte inferior resolvió que la prueba era contradictoria y que por ende

las conclusiones de la Junta eran concluyentes. Se descansa en los siguientes casos: *Coll* v. *Todd,* 35 D.P.R. 625; *Rivera* v. *Asamblea Municipal,* 39 D.P.R. 79; *Fernández* v. *Pavía,* 42 D.P.R. 768, y *Valldejuli* v. *De Castro,* 52 D.P.R. 286. Podríamos decir aquí que no estamos del todo convencidos de que la situación creada por la Ley número 99 para la remoción de un Administrador de la Capital sea idéntica o aún similar al derecho de un jefe de departamento a destituir a uno de sus subalternos. Sea esto como fuere, subsiste el hecho de que en todos estos casos la persona que lee la opinión tendría alguna idea sobre la naturaleza esencial de los cargos presentados contra el allí peticionario.

Ninguno de los alegatos presentados por las partes nos hace ver claramente qué fué lo que el Alcalde dejó de hacer ni qué debió haber hecho con respecto al acueducto. Es obvio que la regla aplicable a la destitución de subalternos debe ser distinta, toda vez que el Alcalde es responsable de los actos de sus empleados. No existe relación de patrono y empleado entre la Junta de Comisionados y el Administrador de la Capital. Cuando el administrador de una ciudad va a ser destituído de su cargo, la Asamblea Municipal debe alegar la justa causa por que va a destituirle, de manera específicamente más clara de lo que se hizo en este caso.

El cargo número XXII se refiere a que el Administrador de la Capital dejó de poner en vigor ciertas ordenanzas. No trataremos de copiarlas. La corte resolvió que la prueba era contradictoria. La hemos examinado y no hallamos que el dejar de poner en vigor algunas de estas ordenanzas equivaliera quizás a algo más que un abuso de discreción o a una divergencia de criterio con respecto a los méritos de las ordenanzas, y no era la justa causa a que el estatuto se refiere.

El cargo verdaderamente importante en este caso lo fué el que se refería al acueducto. En nuestra opinión, todos los demás cargos eran negligibles. Podría decirse, sin embargo, que si el cargo presentado contra el Alcalde se

hubiera basado originalmente tan sólo en su manera de proceder respecto al acueducto, él habría ido tal vez mejor preparado ante la Junta de Comisionados para defender su caso. Conforme hemos indicado antes, en el momento en que escribimos, no tenemos idea de algo que el Administrador debió exactamente haber hecho, que no hizo.

Hubo un prolongado juicio. Un número de ciudadanos prominentes eran miembros de la Junta de Comisionados y participaron en el juicio seguido contra el Administrador de la Capital, mas de parte de ellos nada hallamos en los autos que demuestre gran actividad con respecto a la dirección del acueducto. Podría resolverse que ellos asumieron alguna de la responsabilidad. Nada hallamos en el alegato de la apelada y prácticamente nada en la transcripción taquigráfica elevada a este tribunal que nos indique de manera específica qué fué lo que el Administrador debió haber hecho bajo las circunstancias de este caso. Evidencia relativa a lo que alcaldes anteriores habían hecho, según vemos, fué excluída cuando el Administrador trató de aducir prueba de esa índole. Hallamos, sí, lo bastante para demostrar que cuando el Administrador se hizo cargo del Gobierno de la Capital, el acueducto ya estaba en malas condiciones.

De alguna de la prueba presentada se desprende de manera definitiva que si la ciudad de San Juan hubiera podido depender exclusivamente del agua que recibía de Guaynabo, no hubiera habido gran dificultad. Sin embargo, subsistía el hecho de que la ciudad, antes del nombramiento del Sr. De Castro, había usado para el suministro necesario las aguas procedentes de Río Piedras. Ahora bien, este volumen de aguas estaba hasta cierto punto contaminado con el bacilo coli. De la prueba aparecía suficientemente que alcaldes anteriores, al igual que el Dr. De Castro, por recomendación de sus propios ingenieros, se sintieron obligados a utilizar ambas fuentes de abastecimiento para suplir la cantidad de agua necesaria a la ciudad de San Juan. Una de las declaraciones que hallamos en los autos demuestra que

los vapores que venían a la Isla no utilizaban el agua del acueducto, mas algún testimonio posterior fué al efecto de que la utilizaban para la época en que se celebraba la vista.

Además, en el interregno San Juan tuvo también bastante agua y su población no ha sufrido pestilencias ni otras calamidades por razón del estado del agua que se le suministra.

Durante la época en que el Sr. De Castro era Administrador de la Capital la población de la ciudad de San Juan aumentó no sólo debido al crecimiento natural y a la afluencia de todas partes de la Isla, sino también debido a que la P.R.E.R.A., la P.R.R.A. y otras agencias federales trajeron un aumento de población así como un aumento en esa clase de construcciones donde el agua se usa en mayor cantidad.

El Alcalde con su declaración demostró que él estaba penetrado de la difícil situación y que trataba de remediarla. Confiaba obtener mayores fondos y trataba de conseguirlos, pero infructuosamente. No obstante, consiguió algunos y trató de remediar la situación aumentando el volumen de agua.

Hemos examinado la prueba, a pesar de que la apelada ha dejado de hacernos un resumen de ella, y no podemos hallar ni resolver que las actuaciones del Administrador, en tanto en cuanto nos han sido presentadas, en lo concerniente al estado del acueducto, fueran justa causa para que se le destituyera. El Alcalde era responsable de todos los trabajos importantes que se hicieran para el Municipio de San Juan. No pretendemos decir que él no pudiera hacer más para mejorar el estado del acueducto, mas la apelada no nos ha indicado el camino.

En la teoría de que la corte de distrito no podía examinar la supuesta prueba contradictoria por ser la apelada el único juez de la misma, ésta dice que no debe tratar de discutir las 600 páginas de que se compone la transcripción de evidencia. Según hemos dicho antes los cargos específicos presentados contra el Alcalde con respecto al acueducto

no se destacan como la justa causa a que el estatuto se refiere. Dada la actitud estricta del apelante sobre la interpretación del artículo 22 de la Ley núm. 99, no estamos totalmente sorprendidos de que la corte inferior se sintiera obligada a adoptar una actitud similar estricta con respecto a la clase de destituciones que tenía derecho a revisar, o sea infracciones a la Constitución, Carta Orgánica, o leyes de Puerto Rico. Creemos, sin embargo, que si existe una fuerte duda sobre la suficiencia de los cargos, la ley es y debe ser que el Alcalde no sea destituído. El resolver otra cosa sería contrario a la ley.

Si bien resolvemos que el Alcalde puede ser destituído por negligencia inexcusable, también nos sentimos obligados a resolver que la prueba de tal negligencia inexcusable debe ser algo similar a la exigida para probar un crimen, ya sea éste grave o menos grave. *Noscitur a sociis.* Empero, aun si el cargo relativo al acueducto hubiera sido algo más grave de lo que aparece, dados todos los precedentes con respecto al acueducto, no creemos que por sí solo constituye justa causa para la remoción del Administrador de la Capital. Éste es uno de los motivos principales por los cuales no estamos de acuerdo con la corte inferior. Igualmente tenemos seria duda en torno a si los cargos eran suficientemente específicos y respecto a si la corte inferior no tenía derecho a hacerlo así constar.

*La sentencia apelada debe ser revocada y en su lugar dictarse otra anulando las Ordenanzas número 370 de enero 5, 1939, y número 373, de abril 5, 1939, que decretaron la suspensión y destitución del Administrador de la Capital, y ordenando en su consecuencia la reposición del peticionario Carlos M. de Castro en su cargo de Administrador de la Capital, retroactiva dicha restitución al 5 de enero de 1939, fecha en que el peticionario fué suspendido de empleo y sueldo.*