**AA-95-78**                                           **1**

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Josefa Antonia Aponte López y Adrián Ramos López<br>    Querellantes-Apelantes<br><br>    .V<br><br>Hon. Víctor Figueroa Orozco Alcalde de San Lorenzo<br><br>    Querellado-Apelado<br><br>Comisión para Ventilar Qurellas Municipales<br><br>    Agencia Apelada | Apelación Administrativa<br><br>98TSPR122 |

Número del Caso: AA-95-89

Abogada Parte Apelante:        Lcda. Carmen M. Quiñones Núñez

Abogados Parte Apelada:        Lcda. Luz E. Ríos Arzuaga
                               Lcdo. Fernando Cruz Tollinche

Fecha: 9/16/1998

Materia: Procedimiento Bajo Ley 170 y 81

    Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Josefa Antonia Aponte López
y Adrián Ramos López

        Querellantes-Apelantes

            v.

                                                      Apelación
Hon. Víctor Figueroa Orozco          AA-95-89         Administrativa
Alcalde de San Lorenzo

        Querellado-Apelado

Comisión para Ventilar Querellas
Municipales

        Agencia Apelada


                PER CURIAM


        San Juan, Puerto Rico a


        El 25 de agosto de 1995, los querellantes radicaron el presente recurso de apelación administrativa en revisión de una resolución de la Comisión para Ventilar Querellas Municipales mediante la cual dicha agencia administrativa desestimó la querella que éstos presentaran en contra del Alcalde de San Lorenzo[1]. El 26 de abril

---

[1] **Acogemos esta apelación al amparo de la Ley de la Judicatura de 1994, Plan de Reorganización Núm. 1(a) de la Rama Judicial, de 28 de julio de 1994, antes de ser enmendada por la Ley Núm. 248 de 25 de diciembre de 1995, 4 L.P.R.A. sec. 22 et seq. El Artículo 3.002 inciso (3) de dicha Ley, disponía que el Tribunal Supremo revisaría, mediante recurso de apelación, las decisiones, resoluciones y providencias dictadas por organismos, funcionarios y agencias administrativas y por subdivisiones políticas del Estado Libre Asociado de Puerto Rico.**

de 1996, el Alcalde querellado presentó su escrito en oposición al recurso de la parte querellante. Contando con la comparecencia de ambas partes y estando en condiciones de resolver, procedemos a así hacerlo.

I

El 24 de octubre de 1994, los esposos Josefa Aponte López y Adrián Ramos López radicaron una querella ante la Comisión para Ventilar Querellas Municipales, en adelante Comisión, contra el actual Alcalde de San Lorenzo, Hon. Víctor Figueroa Orozco. En su querella, los esposos Ramos-Aponte alegaron que el referido Alcalde ordenó a dos empleados del Municipio conseguir unos documentos relacionados con una propiedad ubicada en San Lorenzo de la cual son titulares los querellantes. Según se alega en la querella, con ese propósito en mente, los señores Luis M. Sustache Cintrón[2] y Esmeraldo Cruz Aponte irrumpieron en la residencia de los mencionados esposos y, en actitud amenazante, violenta e intimidante, le gritaron a los querellantes que le entregaran los documentos relativos a la referida propiedad.

Los querellantes notificaron a la Policía de Puerto Rico de estos incidentes y, luego de una investigación, se

_____

[2] No obstante mencionarse en la querella que el Sr. Sustache Cintrón era un empleado municipal al momento de los hechos, en el expediente administrativo consta una certificación de la Directora de Personal del Municipio de San Lorenzo, emitida el 24 de abril de 1994, a los efectos de que tal persona no es y nunca ha sido funcionario de dicho municipio.

radicaron unas denuncias en contra de los Sres. Sustache Cintrón y Cruz Aponte.[3] Después de celebrado el juicio, éstos fueron encontrados culpables de cometer el delito de violación de morada.

Asimismo, se señaló en la querella que el Alcalde fue testigo de la defensa en el aludido juicio criminal y que admitió que éstos habían actuado conforme a sus instrucciones. Por último, se alegó que, a la fecha de presentarse la querella, el Alcalde ni había iniciado una investigación administrativa en contra de las personas involucradas ni les había impuesto sanción alguna.

Los querellantes arguyeron, además, que el Alcalde debía ser sancionado puesto que se excedió de sus facultades al dar la orden a los empleados y formó parte de los hechos constitutivos de delito de violación de morada, "ya que fue la parte originadora [sic] e intelectual de los hechos". Este proceder del Alcalde constituye, alegan los querellantes, "una actuación ilegal que implica una negligencia inexcusable", así como "un abandono de sus facultades y una abierta violación a los deberes impuestos a su cargo". Esto último, debido a que el Alcalde no tomó acción alguna contra dichos empleados municipales.

El 23 de diciembre de 1994, la parte querellada presentó una moción de desestimación alegando: que los Sres. Sustache

---

[3] **Ambos individuos fueron acusados de cometer los delitos de alteración a la paz y de violación de morada; el Sr. Sustache Cintrón fue acusado también de cometer el delito de impostura.**

y Cruz habían sido exonerados y declarados inocentes de los cargos criminales imputados en su contra[4]; que al Alcalde nunca se le imputaron actos culposos, negligentes o criminales por las alegadas actuaciones de su empleado; y que el Alcalde no faltó a su responsabilidad ni a los deberes inherentes a su posición de alcalde. El 8 de febrero de 1995, los querellantes presentaron una moción en cumplimiento de la orden emitida por la Comisión de mostrar causa por la cual no debía desestimar la querella. Mediante la misma, refutaron las alegaciones del Alcalde y señalaron, entre otros, que la exoneración criminal de los funcionarios públicos no impedía que administrativamente se le formularan cargos.

El 25 de abril de 1995 se celebró una vista sobre la procedencia de la solicitud de desestimación de la querella. A dicha vista comparecieron ambas partes representadas por sus respectivos abogados. A tenor con la prueba presentada en

---

[4] **El 11 de febrero de 1994, el antiguo Tribunal de Distrito dictó sentencia hallando culpables a los acusados de cometer el delito de violación de morada. Inconformes, el 22 de febrero siguiente éstos radicaron una moción de reconsideración o nuevo juicio, la cual fue denegada. Luego, el 1 de mayo de 1994, los convictos apelaron ante el extinto Tribunal Superior de la sentencia condenatoria y de la resolución denegando la reconsideración o nuevo juicio.**

**El 22 de octubre de 1994, estando pendiente la apelación, los convictos solicitaron del Tribunal Superior retirar el recurso incoado. Ese mismo día, presentaron una segunda moción de reconsideración ante el Tribunal de Distrito, la cual fue declarada con lugar. En consecuencia, dicho tribunal reconsideró su fallo original y absolvió a los acusados el 10 de noviembre de 1994.**

**De la anterior resolución, el ministerio público recurrió vía certiorari el 12 de diciembre de 1994. El 16 de mayo de 1995, el Tribunal de Circuito de Apelaciones revocó la determinación del Tribunal de Distrito por considerar que dicho foro había actuado sin jurisdicción. Este Tribunal desestimó el recurso presentado ante nos por los acusados mediante resolución del 1 de diciembre de 1995.**

la aludida vista[5], la Comisión emitió una resolución el 2 de junio de 1995 en la cual resolvió que, a pesar de que es norma reiterada en nuestro ordenamiento jurídico que una absolución criminal de un empleado público no impide que se le sancione en un procedimiento administrativo, la conducta imputada por los querellantes al empleado municipal en cuestión no configuraba una violación a las leyes, ordenanzas, resoluciones y reglamentos aplicables a los municipios. Por tal razón, la Comisión concluyó que el Alcalde no estaba en la obligación de radicarle cargos administrativos al empleado. Además, sostuvo la Comisión que el Alcalde tenía discreción para radicar dichos cargos, pues de estimar que no se había infringido ningún precepto legal aplicable a los municipios no venía obligado a radicar la querella en contra del empleado. La Comisión razonó que como aquí el Alcalde creyó que el funcionario no había cometido violación alguna, en el ejercicio de su discreción, el Alcalde no tenía por qué radicarle cargos.

Ante este dictamen, la parte querellante radicó el 21 de junio de 1995 una moción de reconsideración, la cual fue denegada por la Comisión mediante resolución de 26 de julio de 1995. Inconforme con todo lo anterior, el 25 de agosto de

---

[5] **Se sometieron en evidencia los siguientes documentos: (1) certificación negativa de la Directora de Personal del Municipio de San Lorenzo, fechada 24 de abril de 1994, acreditativa la misma de que el Sr. Sustache Cintrón no es ni nunca fue empleado de ese municipio; (2) Sentencias del 10 de noviembre de 1994 mediante la cual se absolvieron a los Sres. Cruz Aponte y Sustache Cintrón; (3) Minuta de la vista en reconsideración celebrada el 10 de noviembre de 1994 en el caso criminal contra las mencionadas personas. La parte querellante objetó la presentación del primer "exhibit".**

1995, los querellantes radicaron un recurso de apelación administrativa ante este Foro señalando que erró la Comisión:

> "I. ...al determinar, como cuestión de derecho, que conforme [a] la Ley de Municipios Autónomos un Alcalde no viene obligado a iniciar un procedimiento disciplinario en contra de un funcionario o empleado municipal.
>
> II. ...al desestimar la querella presentada sin conceder y celebrar una vista adjudicativa conforme lo mandata [sic] la Ley Número 170 del 12 de agosto de 1988."

II

La Ley de Municipios Autónomos define el término "Alcalde" como el "Primer Ejecutivo del gobierno municipal".[6] En ese sentido, este Tribunal ha reconocido que el alcalde "es el jefe del poder ejecutivo local, jefe administrativo de los distintos departamentos y servicios municipales, colaborador de la Asamblea Municipal en el desenvolvimiento de la función legislativa y representante legal del municipio en actos públicos y procedimientos judiciales". Gobernador de P.R. v. Alcalde de Juncos, 121 D.P.R. 522, 531 (1988).

Por otro lado, la Comisión para Ventilar Querellas Municipales está autorizada por ley para "entender y resolver las querellas o cargos formulados contra cualquier Alcalde por el Gobernador de Puerto Rico, el Director de la Oficina de Etica Gubernamental, la Asamblea o por cualquier

---

[6] **Artículo 1.003 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4001.**

persona".[7] La Comisión fue creada con el propósito específico de entender en los procesos disciplinarios comenzados en contra de los alcaldes. Gobernador de P. R. v. Alcalde de Coamo, Opinión y Sentencia de 21 de septiembre de 1992; Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 726 (1982). Su objetivo principal es evitar lesiones al interés público. Gobernador de P. R. v. Alcalde de Coamo, ante. Así también, la Comisión está facultada para ordenar la destitución de un alcalde cuando resulten probados los cargos en su contra. Robledo, Alcalde v. C.V.Q.M., 95 D.P.R. 1, 10 (1967).

La Ley de Municipios Autónomos dispone que un alcalde podrá ser destituido de su cargo por haber incurrido "en actos ilegales que impliquen abandono, negligencia inexcusable o conducta lesiva a los mejores intereses públicos en el desempeño de sus funciones".[8] La Comisión es el foro administrativo que debe realizar en primera instancia dicha determinación. Vélez Ramírez v. Romero Barceló, ante, pág. 726. La razón para esto es que "presuntivamente [sic] está particularmente facultada para determinar lo que es 'conducta inmoral o actuaciones ilegales que impliquen abandono, negligencia inexcusable o conducta lesiva a los mejores intereses públicos, en el desempeño de sus funciones'". Vélez Ramírez v. Romero Barceló, ante, pág. 727.

---

[7] **Artículo 18.002(a) de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4852(a).**

[8] **Artículo 3.008 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4108.**

Ahora bien, en Robledo, Alcalde v. C.V.Q.M., ante, pág. 13, resolvimos que la determinación de si una conducta constituye una actuación ilegal que implique abandono, negligencia inexcusable o conducta lesiva a los mejores intereses públicos en el desempeño de sus funciones es una cuestión de derecho revisable en iguales términos por este Tribunal. Por tal razón, procedemos a revisar en todos sus aspectos, y de igual modo, la conclusión hecha por la Comisión en el presente caso a los efectos de que las actuaciones u omisiones del Alcalde en controversia no constituyeron una conducta sancionable al amparo de la Ley de Municipios Autónomos.[9]

III

Este Tribunal ha tenido la oportunidad de delimitar el ámbito del concepto "actos ilegales que impliquen abandono, negligencia inexcusable o conducta lesiva a los mejores intereses públicos en el desempeño de sus funciones" contenido en el Artículo 3.008 de la Ley de Municipios Autónomos.[10] Existe jurisprudencia --desarrollada en relación con disposiciones parecidas de leyes anteriores-- en donde hemos ido estableciendo las condiciones que deben suscitarse

---

[9] **Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. sec. 4001 et seq.**

[10] **21 L.P.R.A. sec. 4108.**

para destituir a un alcalde de su cargo bajo este fundamento.[11]

Así, en ocasión de estudiar el significado del referido concepto incluido en el Artículo 37(1) de la antigua Ley de Municipios[12], este Tribunal sostuvo que:

> "La forma en que está redactado el estatuto sugiere que el criterio rector para la destitución no participa de naturaleza punitiva para el incumbente sino que responde al propósito de evitar lesiones al interés público. La medida debe responder al mejoramiento del servicio público, y por tanto debe tratarse de conducta detrimental para la disciplina y eficiencia de la función pública." Robledo, Alcalde v. C.V.Q.M., ante, pág. 13. (Enfasis suplido).

Respecto a la evidencia necesaria para probar que una actuación de un alcalde constituye negligencia inexcusable, este Tribunal ha resuelto que "la prueba de tal negligencia inexcusable debe ser algo similar a la exigida para probar un crimen, ya sea éste grave o menos grave". De Castro v. Junta de Comisionados, 57 D.P.R. 153, 163 (1940). Hemos sostenido, además, que militará a favor del alcalde el "hecho de que se trata de un funcionario seleccionado en elecciones generales

---

[11] Véase: Robledo, Alcalde v. C.V.Q.M., ante; De Castro v. Junta de Comisionados, 57 D.P.R. 153 (1940); Díaz v. Charneco, 48 D.P.R. 536 (1935); Rivera v. González, Alcalde, 41 D.P.R. 782 (1931).

[12] El Artículo 37(1) de la Ley de Municipios, Ley Núm. 142 de 21 de julio de 1960, 21 L.P.R.A. sec. 1256(1), leía como sigue:

> "El Gobernador de Puerto Rico, la Asamblea Municipal o cualquier ciudadano, podrá formular cargos al Alcalde por razón de conducta inmoral o actuaciones ilegales que impliquen abandono, negligencia inexcusable o conducta lesiva a los mejores intereses públicos, en el desempeño de sus funciones."

que recibió la confianza de los habitantes del municipio y [que] la causa alegada no [sea] de tal gravedad y consecuencias que requiera que se ignore el mandato popular". Robledo, Alcalde v. C.V.Q.M., ante, pág. 13. Esto es, debido a que la separación de su cargo del primer ejecutivo de un municipio resulta ser un asunto importante para el funcionamiento de la democracia local, se requiere que la actuación ilegal imputada afecte directamente algún interés público.

De todo lo anterior se colige que la conducta incurrida por un alcalde que acarrea su destitución, debe ser una: (a) que afecte los intereses del pueblo y los derechos de sus habitantes; (b) que esté relacionada con la administración del cargo; y (c) que sea una de naturaleza sustancial. En específico, de tratarse de una actuación negligente, ésta debe ser manifiesta, injustificable y de carácter serio; y si lo que se imputa es una actuación ilegal que implique abandono, éste debe ser algo más que una mera omisión o equivocación.[13]

En el presente caso, los querellantes alegan que el Alcalde debe ser destituido por no cumplir con ciertos "deberes ministeriales" enumerados en el Artículo 3.009 de la Ley de Municipios Autónomos.[14] Dicho Artículo —que contiene las facultades, deberes y funciones generales que tendrá un

---

[13] **Véase, en general, E. Córdova, Curso de Gobierno Municipal, España, Editorial Universitaria, 1964, págs. 195-222.**

[14] **21 L.P.R.A. sec. 4109.**

alcalde-- en lo pertinente disponía, <u>al momento de ocurrir</u> <u>los hechos</u>, que[15]:

> "El Alcalde será la máxima autoridad de la Rama Ejecutiva del gobierno municipal y en tal calidad le corresponderá su dirección y administración y la fiscalización del funcionamiento del municipio. <u>El Alcalde</u> <u>tendrá los deberes y ejercerá las funciones</u> <u>y facultades siguientes</u>:
> ....
> (l) Dar cuenta inmediata a las autoridades competentes sobre cualquier irregularidad, deficiencia o infracción de leyes, ordenanzas, resoluciones y reglamentos aplicables al municipio. Adoptar las medidas e imponer las sanciones que se dispongan a los funcionarios o empleados que incurran, o que con su acción u omisión ocasionen tales irregularidades, deficiencias o infracciones.
> ....
> (o) Nombrar todos los funcionarios y empleados y separarlos de sus puestos cuando sea necesario para el bien del servicio, por las causas y de acuerdo al procedimiento establecido en este subtítulo. ...."
> (Énfasis suplido).

Los querellantes argumentan que esta disposición de la Ley les impone un deber ministerial a los alcaldes de actuar pues utiliza la palabra "tendrá"; la cual es imperativa y no meramente directiva. Por lo tanto, plantean que el Alcalde venía obligado a notificar a las autoridades competentes los incidentes acaecidos en la residencia de los querellantes así como a iniciar un procedimiento disciplinario en contra del

---

[15] **El Artículo 3.009 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4109, fue enmendado con posterioridad a la ocurrencia de los hechos ante nos mediante la Ley Núm. 151 de 10 de agosto de 1995 y la Ley Núm. 26 de 28 de abril de 1996. <u>Las enmiendas sufridas por dicho artículo no versan</u> <u>sobre el asunto en cuestión</u>.**

empleado municipal, Sr. Cruz Aponte, conducente a la imposición de una sanción o a la separación de su puesto.

Ante estas alegaciones, resulta forzoso analizar el margen de discreción que tienen los alcaldes al momento de desplegar los deberes y facultades concedidos por la Ley de Municipios Autónomos. Este análisis debe ser realizado teniendo en mente que la actividad gubernamental comprende diversas clases de actuaciones discrecionales. Ello incluye desde la formulación de programas y normas básicas de política pública, a distintos niveles de gobierno, hasta el ejercicio de discreción limitado y rutinario. Piñeiro Manzano v. E.L.A., 102 D.P.R. 795, 798 (1974).

El Artículo 3.009 de la Ley de Municipios Autónomos[16] sólo señala que un alcalde "tendrá los deberes y ejercerá las funciones y facultades" que allí se enumeran. Sin especificarse cuáles son los deberes y cuáles son las funciones y facultades, el legislador procedió a esbozar una serie de actividades que son de la competencia de los alcaldes. Desafortunadamente no existe ninguna expresión del legislador en el historial legislativo de la Ley de Municipios Autónomos que arroje algún tipo de luz sobre cuál fue su intención con respecto a este particular.

Solamente contamos con la interpretación que de esta disposición legal hiciera la Comisión en ocasión de examinar los hechos de este caso. Como hemos expresado, la Comisión

---

[16] **21 L.P.R.A. sec. 4109.**

concluyó que los deberes incluidos en la Ley de Municipios Autónomos caen dentro de aquellas funciones y actuaciones discrecionales que tienen los alcaldes.

En relación con los deberes de los alcaldes, enumerados en la Ley de Municipios Autónomos, somos del criterio que dichos funcionarios tienen cierto grado de discreción respecto a la determinación de si una situación en particular cae, o no, dentro del contexto de ese deber. Ello no puede ser de otra forma. Lo contrario convertiría a estos funcionarios en autómatas burocráticos.

Este ejercicio de discreción que le reconocemos a los alcaldes es el mismo ejercicio de discreción, limitado y rutinario, que tiene todo director o jefe de agencia en el desempeño de sus funciones. Claro está, al igual que otros jefes de agencias, los alcaldes no pueden incurrir en un abuso de poder al ejercer tal discreción. De un alcalde incurrir en tal abuso de discreción, nuestro ordenamiento jurídico le provee a la parte perjudicada unas salvaguardas para remediar esa situación mediante la interposición de una querella ante la Comisión y, posteriormente, por medio de la incoación de un recurso de revisión judicial.

En vista a todo lo anteriormente expresado, resolvemos que en un caso como el que hoy tenemos ante nuestra consideración, la decisión de notificar, o no, a las autoridades competentes los incidentes acaecidos en la residencia de los querellantes, así como de iniciar un

procedimiento administrativo contra un funcionario que ha sido encausado en el ámbito penal, es una de índole discrecional. Por otro lado, y dados los hechos particulares del caso[17], somos de la opinión que el alcalde aquí en controversia no incurrió, al actuar como lo hizo, en un abuso de poder o de discreción. Avalamos, en consecuencia, la decisión que a esos efectos hizo la Comisión para Ventilar Querellas Municipales en el presente caso.

En este punto es menester recordar que este Tribunal ha sostenido que la interpretación del organismo al cual le compete administrar una ley merece deferencia sustancial y dicha interpretación no necesita ser la única razonable para que merezca esa deferencia, bastando con que la misma sea razonable y consistente con el propósito legislativo. Comisionado de Seguros v. General Accident Insurance Co., Opinión y Sentencia de 28 de enero de 1993. Ello es así debido a que dichos organismos cuentan con una vasta

---

[17] **El Sr. Sustache Cintrón, contratado como asesor de programas federales del Municipio de San Lorenzo, y el Sr. Cruz Aponte, director de dicho programa en el Municipio, visitaron a los querellantes por encomienda del Alcalde para manifestarles el interés del Municipio en adquirir una estructura de su propiedad enclavada en un terreno del Municipio y que era necesaria para el desarrollo de un proyecto público a construirse en San Lorenzo. Para dicha expropiación, el Alcalde siguió el procedimiento establecido en la Orden Ejecutiva Número 4874-A de 26 de febrero de 1987, la cual recomienda agotar todos los recursos disponibles para lograr una transacción amistosa entre los dueños de propiedades y las agencias gubernamentales o los municipios de Puerto Rico antes de recurrir al procedimiento judicial de expropiación.**

**Actuando de conformidad con dicha orden, el Alcalde envió a estos dos individuos a la residencia de los querellantes con el único objetivo de fomentar una transacción amistosa y una compraventa voluntaria; no para amedrentarlos como ellos alegan. Creyendo la versión de los hechos realizada por las personas que cuentan con su confianza por ser sus empleados, el Alcalde no encontró base para iniciar una investigación administrativa en este caso.**

experiencia y conocimiento ("expertise") en relación con la materia con la que bregan día tras día. La interpretación que del estatuto las agencias administrativas hagan, y los fundamentos que aducen en apoyo de la misma, resulta de gran ayuda para los tribunales de justicia al éstos encontrarse en la posición de tener que pasar juicio sobre la corrección o no de las decisiones emitidas por dichos organismos. Molini y Vélez Orthodontics v. Negociado de Seguridad de Empleo, 115 D.P.R. 183 (1984). En este caso, la Comisión es un organismo especializado que puede actuar con mayor pericia que los propios tribunales por su compenetración con los problemas de los municipios.

IV

Lo anterior no dispone totalmente del recurso ante nuestra consideración; réstanos resolver si la Comisión venía obligada a conceder una vista adjudicativa antes de desestimar la querella presentada.

De conformidad con la Ley de Municipios Autónomos, todo procedimiento ante la Comisión debe iniciarse con la radicación, en la Secretaría de la Comisión, de un escrito de formulación de querellas o cargos, debidamente jurado, acompañado de la evidencia necesaria para poder aquilatar la substancialidad de la querella o cargo imputado y la

notificación al Alcalde, acompañada de copia certificada del escrito.[18]

La notificación deberá señalar al Alcalde querellado que se le conceden quince días para contestar el escrito y que tiene derecho a comparecer y defenderse ante la Comisión, por sí o por medio de su abogado, a presentar toda prueba documental y testifical que crea pertinente y a una vista pública o privada.[19]

Con respecto a la facultad de la Comisión para desestimar las querellas que se presenten ante ella, la Ley de Municipios Autónomos establece, en su Artículo 18.004[20] lo siguiente:

> "....
> Una vez radicada la contestación a la querella por el Alcalde, la Comisión, dentro de los treinta (30) días siguientes a su recibo, <u>estudiará el expediente y podrá desestimar</u> o señalar una vista para ventilar los cargos formulados. <u>Cuando la Comisión desestime la querella sin celebración de vista notificará su decisión con copia de la resolución al efecto</u>. Dicha resolución contendrá una relación de hechos, determinaciones y conclusiones de derecho de la Comisión. ...." (Enfasis suplido).[21]

---

[18] **Artículo 18.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4854. Véanse, además, los Artículos 6 y 10 de las Reglas de Procedimiento de la Comisión Estatal para Ventilar Querellas Municipales, Reglamento Núm. 3961 de 7 de agosto de 1989.**

[19] **Artículo 18.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4854.**

[20] **21 L.P.R.A. sec. 4854.**

[21] **La Comisión incluyó este designio del legislador en el Artículo 13 de su Reglamento al señalar que "[r]adicada la contestación a la querella, la Comisión podrá desestimar la querella previo haber estudiado [los] escritos [de las partes]". Artículo 13 de las Reglas de Procedimiento de la Comisión para Ventilar Querellas Municipales, Reglamento Núm. 3961 de 7 de agosto de 1989.**

Del citado Artículo se desprende que el legislador le concedió a la Comisión la facultad de optar por desestimar la querella o por señalar una vista adjudicativa, según estime apropiado luego de un análisis y estudio del expediente administrativo. Si la Comisión decide desestimar la querella, sólo debe emitir una resolución a tales efectos que contendrá las determinaciones de hechos y conclusiones de derecho de la Comisión. Por otra parte, cuando elija ventilar la querella, la Comisión tendrá que celebrar una vista, que podrá ser pública o privada, y de la cual notificará al Alcalde querellado y al querellante con no menos de quince días de antelación a la fecha de su celebración.[22]

Ni la Ley de Municipios Autónomos ni la Ley de Procedimientos Administrativos Uniformes[23] exigen que la Comisión celebre una vista adjudicativa para poder desestimar una querella radicada ante sí. Si después de examinar el expediente administrativo la Comisión llega a la conclusión de que la querella o los cargos imputados son inmeritorios, o que no se acompaña la evidencia necesaria para poder aquilatar la substancialidad de la querella o cargo, ésta podrá desestimar la querella e inclusive imponer sanciones o multas.[24]

---

[22] **Artículo 18.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4854.**

[23] **Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2101 et seq.**

En el presente caso, la Comisión estudió el expediente administrativo y optó por desestimar la querella. Cumpliendo con el mandato legislativo, emitió una resolución el 2 de junio de 1995 en donde consignó sus determinaciones de hechos y conclusiones de derecho[25]. Por tal motivo, concluimos que la Comisión actuó conforme a lo dispuesto en la Ley. En consecuencia, resolvemos que el segundo error tampoco fue cometido.

Se dictará Sentencia confirmatoria.

---

[24] **El Artículo 18.008 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4858, autoriza a la Comisión a imponer sanciones o multas por la presentación de querellas o cargos frívolos y sin fundamentos o porque no se acompañe la evidencia necesaria para poder aquilatar la substancialidad de la querella o cargo.**
[25] **Debe mantenerse presente que, en el caso que hoy ocupa nuestra atención, la Comisión, sin tener obligación de hacerlo, celebró una vista.**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Josefa Antonia Aponte López
y Adrián Ramos López

    Querellantes-Apelantes

       v.

                                          Apelación
Hon. Víctor Figueroa Orozco        AA-95-89     Administrativa
Alcalde de San Lorenzo

    Querellado-Apelado

Comisión para Ventilar Querellas
Municipales

    Agencia Apelada

SENTENCIA
San Juan, Puerto Rico a 16 de septiembre de 1998

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmatoria de la resolución emitida por la Comisión para Ventilar Querellas Municipales en el presente caso.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García y el Juez Asociado señor Corrada del Río no intervinieron. El Juez Asociado señor Negrón García no interviene.

                              Isabel Llompart Zeno
                        Secretaria del Tribunal Supremo