EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| William I. Solís Bermúdez<br>Alcalde de Culebra<br><br>Peticionario<br><br>v.<br><br>Oficina del Panel sobre el Fiscal Independiente<br><br>Recurrido<br>-------------------------<br>Luis Javier Hernández Ortiz<br>Alcalde de Villalba<br><br>Peticionario<br><br>v.<br><br>Oficina del Panel sobre el Fiscal Independiente<br><br>Recurrido | Certiorari<br><br>2019 TSPR 11<br><br>201 DPR ____ |

Número del Caso:    CC-2019-35


Fecha: 24 de enero de 2019


Tribunal de Apelaciones:

        Panel V


Abogados de la parte peticionaria:

        Lcdo. Frank Torres Viada
        Lcda. Alexandra Rivera Ríos
        Lcdo. José a. Andreu Fuentes


Abogado de la parte recurrida:

        Lcdo. Hiram R. Morales Lugo

Materia: Resolución del Tribunal con Voto particular de conformidad y Votos particulares disidentes


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| William I. Solís Bermúdez, Alcalde de Culebra<br><br>Peticionario<br><br>v.<br><br>Oficina del Panel sobre el Fiscal Independiente<br><br>Recurrido<br>Luis Javier Hernández Ortiz,<br><br>Alcalde de Villalba<br><br>Peticionario<br><br>v.<br><br>Oficina del Panel sobre el Fiscal Independiente<br><br>Recurrido | CC-2019-0035 | *Certiorari* |

RESOLUCIÓN

En San Juan, Puerto Rico a 24 de enero de 2019.

Examinadas la *Moción solicitando orden de paralización en auxilio de jurisdicción y la petición de certiorari* presentadas por las partes peticionarias, se provee no ha lugar a ambas.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió un Voto Particular de Conformidad al que se unen el Juez Asociado señor Martínez Torres, la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Feliberti Cintrón.

La Jueza Presidenta Oronoz Rodríguez se une al Voto Particular Disidente del Juez Asociado señor Colón Pérez y hace constar la siguiente expresión:

> La Jueza Presidenta Oronoz Rodríguez proveería ha lugar a la *Petición de Certiorari* y a la *Moción solicitando orden de paralización en auxilio de jurisdicción*. En particular, hubiese revocado la determinación del Tribunal de Apelaciones y

reinstalado la *Sentencia* del Tribunal de Primera Instancia por entender que el proceso que realizaron la Unidad de Procesamiento Administrativo Disciplinario (UPAD) y la Oficina del Panel sobre el Fiscal Especial Independiente fue uno *ultra vires* y por ende nulo. Surge claramente que estos no cumplieron con el Reglamento de la UPAD y que se le violó el debido proceso de ley a ambos funcionarios.

La Juez Asociada señora Rodríguez Rodríguez se une al Voto Particular Disidente del Juez Asociado señor Colón Pérez y emite un Voto Particular Disidente.

El Juez Asociado señor Rivera García emite un Voto Particular Disidente.

El Juez Asociado señor Colón Pérez emite un Voto Particular Disidente al que se unen la Jueza Presidenta Oronoz Rodríguez y la Juez Asociada señora Rodríguez Rodríguez.


                              José Ignacio Campos Pérez
                              Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| William I. Solís Bermúdez, Alcalde de Culebra | | |
|---|---|---|
| Peticionario | | |
| v. | | |
| Oficina del Panel sobre el Fiscal Especial Independiente | CC-2019-35 | *Certiorari* |
| Recurrida | | |
| Luis Javier Hernández Ortiz, Alcalde de Villalba | | |
| Peticionario | | |
| v. | | |
| Oficina del Panel sobre el Fiscal Especial Independiente | | |
| Recurrida | | |

Voto Particular de Conformidad emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ, al cual se unen el Juez Asociado señor MARTÍNEZ TORRES, la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor FELIBERTI CINTRÓN.

San Juan, Puerto Rico, a 24 de enero de 2019.

Estoy conforme con la revocación del dictamen del Tribunal de Primera Instancia, tal como lo hizo el Tribunal de Apelaciones, por considerar que los funcionarios públicos electos no deben tener un trato privilegiado en la faceta de investigación de posibles irregularidades administrativas en comparación con otros ciudadanos. Lo contrario equivaldría a imponer por *fiat*

*judicial* un trato preferente a los Alcaldes peticionarios que no poseen los ciudadanos sujetos a investigaciones rutinarias.

El caso de autos tiene su génesis en un informe referido por el Departamento de Justicia a la Oficina del Panel sobre elFiscal Especial Independiente (OPFEI) referente a unas alegadas actuaciones de los Alcaldes de Culebra y Villalba. En particular, los hechos atribuidos al Alcalde de Culebra se relacionan con la utilización de fondos municipales para pagar el servicio de unos aviones *charter* para transportar a familiares y empleados a Saint Thomas con el propósito de celebrar el Día del Profesional Administrativo. En cuanto al Alcalde de Villalba, los hechos están relacionados a la alegada utilización de unos vehículos de motor en la campaña política donados por un contratista del Municipio y a quien, a su vez, se le otorgaron contratos sin cumplir con el requisito de una subasta pública. Basada en ello, la OPFEI refirió los asuntos a su Unidad de Procesamiento Administrativo Disciplinario (UPAD) bajo su facultad de destituir o suspender administrativamente a los alcaldes y alcaldesas. Ambos Alcaldes fueron debidamente notificados de tal referido y de la base del mismo, al igual que ambos tuvieron oportunidad de responder en esta etapa preliminar del

proceso.[1] Luego de ello, el Panel asignó un "Abogado Investigador de la UPAD" para realizar la investigación administrativa disciplinaria. Una vez comenzó la investigación, se suscitó la controversia de autos, pues los Alcaldes, aquí peticionarios, cuestionaron su validez ante el tribunal.

Así, a modo de síntesis, la controversia del caso se reduce a determinar si la OPFEI tiene facultad investigativa en la tramitación disciplinaria administrativa de los alcaldes y alcaldesas con el posible resultado de una suspensión o destitución de sus puestos. Ello, a los fines de distinguir la etapa investigativa de la adjudicativa en estos procesos. De un examen del derecho aplicable, opino que claramente la OPFEI, además de adjudicar las querellas administrativas presentadas en contra de los alcaldes y alcaldesas, también le fue delegada una función investigativa. En virtud de ello, procedía la revocación del dictamen del Tribunal de Primera Instancia, el cual erróneamente no reconoció el poder delegado a la OPFEI

---

[1]Del expediente se desprende que en todo momento ambos Alcaldes fueron debidamente advertidos que la etapa procesal en la que se encontraba el asunto ante la Unidad de Procesamiento Administrativo Disciplinario (UPAD) era la investigativa y no la adjudicativa. Al extremo, que, a raíz de una negociación de estipulación entre las partes, el Panel sobre el Fiscal Especial Independiente ordenó a que se enmendara la notificación inicial para disipar dudas que se trataba de una "notificación de inicio de investigación administrativa". Véase, Apéndice de Petición de Certiorari, págs. 162-163, 308-309 y 339.

para ejercer una función investigativa en estos procesos administrativos. Veamos.

Originalmente, los asuntos disciplinarios en contra de los alcaldes y las alcaldesas se atendían y adjudicaban ante la Comisión para Ventilar Querellas Municipales (Comisión). Esta entidad estaba facultada para recibir y tramitar las querellas que se presentaran ante su consideración. Véase, 21 LPRA secs. 4851 y 4852. Según su andamiaje, especificaba que "[t]odo procedimiento se iniciará con la presentación en la Secretaría de la Comisión de un escrito de formulación de querellas o cargos, debidamente jurado, acompañado de la evidencia necesaria para poder aquilatar la sustancialidad de la querella o cargo imputado y la notificación al alcalde, acompañada de copia certificada del escrito". 21 LPRA sec. 4854. Es más, detallaba que los procedimientos ante la Comisión no podían ser utilizados como mecanismo de búsqueda de información, sin que la querella estuviese debidamente sustentada. 21 LPRA sec. 4858. A raíz de ello, se puede apreciar que la Comisión no tenía facultad en ley para realizar sus propias investigaciones y, así, estaba limitada a trabajar sólo con los asuntos que otras entidades o personas particulares le presentaban.

Ahora bien, en virtud del Plan de Reorganización de la Comisión para Ventilar Querellas Municipales, Plan de Reorganización 1-2012, la Asamblea Legislativa

decidió eliminar la Comisión y transferir sus funciones a la OPFEI. Así, esta última quedó facultada para suspender o destituir administrativamente de empleo a los alcaldes o alcaldesas que así lo ameritaran. A esos fines, el Artículo 2 del Plan de Reorganización dispone que:

Particularmente, la [OPFEI] tendrá facultad para suspender del empleo a un alcalde o alcaldesa cuando se ha encontrado causa para arresto por delito grave y los delitos contra la función pública y el erario; o delito menos grave que implique depravación moral. Además, la [OPFEI] podrá disponer la destitución de un alcalde o alcaldesa cuando resulte convicto(a) de delito grave y los delitos contra la función pública y el erario; o delito menos grave que implique depravación moral y dicha sentencia advenga final y firme. De igual forma, la [OPFEI] podrá decretar la suspensión o destitución de un Alcalde o Alcaldesa cuando éste(a) incurra en conducta inmoral o en actos ilegales que impliquen abandono inexcusable, negligencia inexcusable que resulte lesiva a los mejores intereses públicos en el desempeño de sus funciones, según dichos términos son definidos en este Plan. 3 LPRA Ap. XXII, Art. 2.

Del historial legislativo se desprende que la razón de ser de la transferencia de tal potestad para suspender o destituir a algún alcalde o alcaldesa de su puesto fue que se reconoció que la mayoría de estas querellas se originaban en la Oficina de Ética Gubernamental y en el Departamento de Justicia, pero terminaban bajo la investigación de la OPFEI. Ante esa situación, se pretendió delinear un proceso más efectivo y se reconoció el carácter neutral e independiente de la OPFEI, así como su facultad en ley para realizar investigaciones. Precisamente, en la declaración de Política Pública se enfatiza que: "[e]sta

reorganización tendrá como resultado una mejor fiscalización a los gobiernos municipales, **al igual que investigaciones eficientes, eficaces e íntegras**. De igual forma, se eliminan redundancias y duplicidad de procesos y funciones **para que el Gobierno pueda responder de manera ágil y efectiva al instrumentar la política pública de esta Administración de cero tolerancia frente a la corrupción**". (Énfasis suplido). Íd.

A diferencia de la antigua Ley de la Comisión, el Plan de Reorganización fue más específico y otorgó mayor amplitud en cuanto a las injerencias de la OPFEI en esta nueva faceta. De entrada, creó la UPAD, adscrita a la OPFEI, con la encomienda de recomendar al Panel el curso de acción en estos procesos disciplinarios. 3 LPRA sec. 99t-1. Cónsono con ello, la ley habilitadora le confiere total discreción a la OPFEI para designar o contratar el personal de la UPAD necesario para llevar a cabo sus funciones y deberes. Íd. A su vez, el Plan de Reorganización, a diferencia de la Ley de la Comisión, reconoció expresamente que, ante cierta información, la OPFEI tiene facultad para investigar. A tales efectos, dispone que, entre los escenarios que la UPAD puede emitir su recomendación a la OPFEI está el siguiente:

(c) **Cuando el Panel reciba información, bajo juramento, que a su juicio constituya causa suficiente para investigar si un alcalde o alcaldesa ha incurrido en conducta inmoral, actos ilegales que impliquen abandono inexcusable, negligencia inexcusable que resulte lesiva**

**a los mejores intereses públicos en el desempeño de sus funciones, según dichos términos son definidos en este Plan, iniciará un proceso para determinar si la magnitud de los hechos justifican la suspensión o destitución del alcalde o alcaldesa.** La celebración del proceso estará a cargo de la UPAD la cual deberá notificar al Panel un informe con sus recomendaciones.

Si de la investigación realizada el Panel determina que en efecto el alcalde o alcaldesa incurrió en conducta inmoral, actos ilegales que impliquen abandono inexcusable, negligencia inexcusable que resulte lesiva a los mejores intereses públicos en el desempeño de sus funciones, emitirá una resolución suspendiéndolo o destituyéndolo del cargo. (Énfasis suplido). Íd.

Como podemos apreciar, el Plan de Reorganización expresamente reconoce la facultad de la OPFEI de iniciar una investigación cuando reciba información que entienda constituye causa suficiente. Ello, adicional a la facultad adjudicativa heredada de la Comisión, a la cual expresamente no se le reconoció tal función investigativa. Según mencioné, la Ley de la Comisión solo hacía referencia a la tramitación de las querellas y ello, con la salvedad de que tenían que ir acompañadas con "la evidencia necesaria" para aquilatar su sustancialidad. 21 LPRA sec. 4854. Es decir, el Plan de Reorganización flexibilizó el inicio del trámite para que, ante la información que se entienda suficiente, la OPFEI y la UPAD puedan iniciar una investigación a los fines de determinar si, en efecto, amerita la celebración de un trámite adjudicativo. Esta interpretación es cónsona con el propósito del Plan de Reorganización que, a fin de cuentas, tiene como norte que el Estado pueda responder y tramitar efectivamente

los asuntos de corrupción. Al reconocer esta facultad investigativa, a base de la información ya referida por otro ente o persona individual, se garantiza que los actos corruptos que no necesariamente sean criminales puedan ser investigados desde la esfera administrativa independiente de la OPFEI.

Asimismo, en diferentes dimensiones, podemos percibir la amplitud de poderes que le fueron otorgados a la OPFEI, en estos procesos administrativos, a diferencia de los conferidos a la antigua Comisión. La Comisión no podía decretar una suspensión preventiva mientras se dilucidaba el proceso, pues en esas circunstancias tenía que acudir al tribunal a solicitarlo. 21 LPRA sec. 4856. En cambio, el Plan de Reorganización vigente reconoce expresamente la facultad de la OPFEI y la UPAD de decretar tal suspensión. Claro está, un proceso adjudicativo de suspensión conlleva reconocer unas garantías mucho mayores a la fase preliminar de investigación. Sin embargo, en el caso que nos ocupa, no nos encontramos en esa etapa formal.

Por otro lado, el Plan de Reorganización no hace referencia a lo que disponía la Ley de la Comisión, en cuanto a solicitar al Secretario de Justicia la asignación de un abogado para representar a un querellante que sea un ciudadano particular, bajo la premisa de que la Comisión no investigaba y los

ciudadanos particulares tenían que suplir toda la evidencia. Actualmente, bajo el Plan de Reorganización, ello no sería necesario pues la investigación realizada por la UPAD suple tal laguna.

Ante ese cuadro, no es correcta la interpretación que a la OPFEI y la UPAD no se le puede reconocer esta faceta investigativa, bajo el razonamiento de que el Plan de Reorganización sólo le confirió los poderes de la Comisión. Ciertamente, el Plan le confirió el poder de llevar a cabo trámites administrativos para suspender o destituir alcaldes o alcaldesas, poder que no tenía previo a la aprobación de este Plan. No obstante, no podemos obviar los nuevos elementos suministrados en el Plan de Reorganización y el fin de tal transferencia. Según discutido, la Comisión no logró ser efectiva para el propósito que se buscaba, a saber, erradicar la corrupción.[2] De este modo, se le brindaron a la OPFEI las herramientas para llevar a cabo ese cometido, por lo que tal investigación es parte de las herramientas legisladas. Ello, acorde con el carácter independiente, neutral e investigativo que mandata la legislación a la OPFEI. 3 LPRA sec. 99h. En ese sentido, una investigación administrativa previa a la posible formulación de cargos -tal como ocurre con otros ciudadanos y empleados públicos- es un proceso normal y

---

[2]Su objetivo principal es evitar lesiones al interés público. Aponte v. Alcalde de San Lorenzo, 146 DPR 675 (1998).

rutinario en nuestro Estado de Derecho que, como cuestión de realidad, sirve de filtro y beneficia a todos los componentes y, más importante aún, al interés público.

Por tanto, discrepo de la postura de que, en este contexto en particular, al recibirse una información que da base a posibles cargos disciplinarios, automáticamente se torne en un proceso adjudicativo formal. Ello, privaría a la OPFEI de la naturaleza independiente investigativa y de verificar si se satisface el grado de prueba necesario en la esfera administrativa. Además, resultaría un contrasentido para los funcionarios públicos referidos a la OPFEI, toda vez que los conduciría a un proceso disciplinario automático, a pesar de que en esta etapa investigativa ni siquiera ha mediado una formulación de cargos. Tampoco se promovería la eficiencia procesal y el uso adecuado de fondos públicos en la celebración de un proceso adjudicativo formal, que pudiera resultar innecesario, si la investigación revela que no se satisface el grado de prueba requerido.

Por otra parte, el Reglamento de la Unidad de Procesamiento Administrativo Disciplinario (UPAD), Reglamento Núm. 8194 de 10 de mayo de 2012 (Reglamento), fue promulgado en virtud del Plan de Reorganización. Aun cuando el Reglamento delinea el proceso a seguir a los fines de la presentación, tramitación, evaluación,

adjudicación y revisión de los procesos ante la UPAD, en su Artículo 9 aclara, respecto a la jurisdicción de la OPFEI y del UPAD, que "[n]ada de lo dispuesto en este Reglamento, se interpretará como limitativo de la discreción del Panel para conducir aquellos procedimientos que estime necesarios o justos aun cuando no estén expresamente dispuestos en este Reglamento". Ello, a tono con el mandato legislativo de las funciones vitales de la OPFEI en la implementación de la política pública anticorrupción, a saber: investigar, adjudicar, disciplinar o iniciar acciones criminales contra los funcionarios públicos concernidos, tal como he descrito.

Debidamente analizados los planteamientos ante nuestra consideración y por los fundamentos expuestos, opino que procedía revocar el dictamen del Tribunal de Primera Instancia, tal como lo hizo el foro apelativo intermedio, aunque por fundamentos distintos. Un dictamen en contrario ignoraría que a las leyes habilitadoras se les debe brindar una interpretación cónsona con la intención legislativa, la política pública y el interés social que las inspira. Ayala Hernández v. Consejo Titulares, 190 DPR 547, 561 (2014). Una interpretación en contrario a la aquí expuesta no sería acorde ni con la ley habilitadora ni con su reconocimiento de discreción a la OPFEI en el manejo de estos asuntos ni con el propósito en sí para el cual se

le atribuyó jurisdicción a la OPFEI para tramitar el proceso disciplinario en contra de los alcaldes y las alcaldesas. Más aun, con el fin último de agilizar y hacer más efectivas las gestiones gubernamentales para erradicar la corrupción.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| William I. Solís Bermúdez, Alcalde de Culebra<br><br>Peticionario<br><br>v.<br><br>Oficina del Panel sobre el Fiscal Independiente<br><br>Recurrido<br><br>Luis Javier Hernández Ortiz, Alcalde de Villalba<br><br>Peticionario<br><br>v.<br><br>Oficina del Panel sobre el Fiscal Independiente<br><br>Recurrido | CC-2019-0035 | *Certiorari* |

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ al que se unen la Jueza Presidenta ORONOZ RODRÍGUEZ y la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ.

En San Juan, Puerto Rico a 24 de enero de 2019.

Por entender que este Tribunal por *fiat judicial* no puede concederle a la Oficina del Panel sobre el Fiscal Especial Independiente (en adelante, "el Panel"), y en particular a su Unidad de Procesamiento Administrativo Disciplinario (en adelante, "UPAD"), poderes que en virtud de ley no posee, disentimos enérgicamente del curso de acción seguido por una mayoría de esta Curia en el día de hoy.

**En esa dirección, somos de la opinión que actuaciones como éstas, -- las cuales tienen el efecto de dejar la vía libre al procesamiento selectivo, ilegal y discriminatorio de todo tipo de funcionario público --, en nada contribuyen a mejorar la ya maltrecha imagen de las instituciones encargadas del procesamiento criminal en el País. Imagen que, precisamente, y en gran parte, se ha deteriorado como consecuencia de incidentes en extremo similares al asunto que nos ocupa.** Lo anterior, como mínimo, nos resulta lamentable.

I.

Los hechos que dieron margen al presente proceso disciplinario adjudicativo no están en controversia. El pasado 11 de abril de 2017, la Secretaria del Departamento de Justicia, Hon. Wanda Vázquez Garced, remitió al Panel un *Informe de investigación preliminar* relacionado con alegadas actuaciones ilegales del Alcalde de Villalba, Hon. Luis Javier Hernández Ortiz, en el cual recomendaba la designación de un Fiscal Especial Independiente (FEI) para realizar una investigación sobre éste. La FEI designada para atender el asunto, licenciada Leticia Pabón Cruz, realizó la investigación correspondiente y rindió un informe al Panel en el cual determinó que no existía prueba suficiente para sostener cargos criminales en contra del referido Alcalde. No obstante, el 4 de mayo de 2017 el Panel refirió el *Informe de investigación preliminar* del

Departamento de Justicia a la UPAD para la evaluación y recomendación correspondiente.

Así las cosas, el 10 de mayo de 2017 la Directora de la UPAD, la señora Melanie Grandoné Godreau, notificó una querella en contra del Alcalde de Villalba, Hon. Luis Javier Hernández Ortiz. Contestada la querella, ésta nombró al licenciado Rafael Sánchez Hernández como **abogado investigador** de la UPAD, funcionario a quien se le remitió la mencionada querella. Dicho abogado investigador emitió, de forma *ex* parte, una *Orden de citación* al mencionado Alcalde y una *Orden de producción de información* en poder del Alcalde y de terceras personas, so pena de ser encontrados incursos en desacato.

De otra parte, y en un procedimiento separado, el 11 de diciembre de 2017 la Secretaria del Departamento de Justicia remitió al Panel un *Informe de investigación preliminar* relacionado con cierta conducta ilegal del Alcalde de Culebra, Hon. William Solís Bermúdez, en el cual también recomendó la designación de un FEI para realizar una investigación sobre éste. La FEI nombrada para atender el asunto, licenciada Cándida Sellés Ríos, determinó que no existía prueba suficiente para sostener cargos criminales en contra del referido Alcalde. Sin embargo, el 3 de abril de 2018 el Panel refirió el *Informe de investigación preliminar* a la UPAD para la acción correspondiente.

Así pues, el 9 de abril de 2018 la Directora de la UPAD notificó la querella en la que se le imputaron distintos cargos basados en el *Informe de investigación preliminar* sobre las actuaciones del Alcalde de Culebra, Hon. William Solís Bermúdez. Contestada la querella, ésta designó al licenciado Sánchez Hernández como **abogado investigador**, para que realizara la "investigación administrativa, [rindiera] un informe al Panel con el resultado de su investigación y sus recomendaciones". Véase, Apéndice de *Certiorari*, pág. 172. En virtud de lo anterior, el abogado investigador de la UPAD citó, de forma *ex parte,* al mencionado Alcalde.

No conforme con dicho proceso, el 3 de agosto de 2018 el Alcalde de Culebra, Hon. William Solís Bermúdez, radicó una petición de *injunction* y *sentencia declaratoria,* ante el Tribunal de Primera Instancia, en la cual solicitó que el procedimiento administrativo disciplinario seguido por el Panel y la UPAD se declarara ilegal y *ultra vires*. **Lo anterior, por entender que el abogado investigador de la UPAD no tenía la facultad para emitir órdenes de citación y de producción de documentos de manera *ex parte* y sin la intervención de un oficial examinador.** Además, solicitó que el foro primario, mediante *injunction* preliminar, ordenara al Panel y a la UPAD a conducir el procedimiento administrativo disciplinario en estricto cumplimiento

con el Reglamento de la UPAD y con las exigencias del debido proceso de ley.

El 21 de agosto de 2018, el Alcalde de Villalba, Hon. Luis Javier Hernández Ortiz, presentó una demanda en contra del Panel, bajo fundamentos similares a los expuestos en la demanda presentada por el Alcalde de Culebra, Hon. William Solís Bermúdez.

Enterado de lo anterior, el Panel se opuso a la solicitud presentada por los referidos Alcaldes. En esencia, alegó que su ley habilitadora, Ley Núm. 2 de 23 de febrero de 1988, *infra*, le confirió facultades investigativas como ente regulador y fiscalizador de la conducta de funcionarios gubernamentales. En esa dirección, argumentó que su facultad de atender querellas supone necesariamente ejercer funciones investigativas para lo cual tiene autoridad expresa en ley de designar o contratar el personal de la UPAD que sea necesario para dichas funciones, lo cual, a su juicio, incluye al abogado investigador.

Examinados los planteamientos de ambas partes, el 22 de diciembre de 2018 el Tribunal de Primera Instancia, por voz del Hon. Anthony Cuevas Ramos, dictó *Sentencia* en la cual determinó que el procedimiento seguido en este caso en contra de los alcaldes de Culebra y Villalba, Hon. William Solís Bermúdez y Hon. Luis Javier Hernández Ortiz, fue contrario al Reglamento de la UPAD, puesto que el **abogado investigador** encargado de evaluar ambas querellas fue el mismo que continuó el proceso

adjudicativo, cuando lo que procedía era nombrar un oficial examinador que se encargara de esta etapa del procedimiento. A pesar de que posteriormente se nombraron oficiales examinadores, a juicio del foro primario ello no subsanó lo realizado por el abogado investigador toda vez que el proceso administrativo aquí en controversia tenía dos (2) etapas: **una investigativa** y **una adjudicativa**, en la cual intervienen dos (2) personas que realizan funciones distintas.

Según señaló el Juez sentenciador, el argumento de que la parte demandante tenía un remedio adecuado en ley es incorrecto, ya que el procedimiento administrativo disciplinario no se hizo conforme al Reglamento de la UPAD, por lo que fue *ultra vires*. De esta forma, dicho procedimiento se tornó nulo, así como también toda la evidencia e información recopilada.

En vista de lo anterior, el Tribunal de Primera Instancia concedió el *injunction preliminar* solicitado y le ordenó al Panel y a la UPAD que condujera el procedimiento administrativo disciplinario aquí en controversia en cumplimiento estricto con el mencionado Reglamento y el debido proceso de ley. Además, el foro primario resolvió que el abogado investigador de la UPAD no tenía facultad para emitir órdenes de citación y producción de documentos de manera *ex parte* y sin la intervención de un oficial examinador que rigiera los procedimientos.

Inconforme con la referida determinación, el Panel acudió al Tribunal de Apelaciones mediante recurso de apelación solicitando la revisión de la *Sentencia* emitida por el foro primario. En esencia, el Panel señaló que el Tribunal de Primera Instancia erró al no desestimar las demandas por falta de jurisdicción, ello por entender que eran la entidad con jurisdicción exclusiva para atender y dilucidar los casos administrativos ante dicha agencia. Además, señaló que el foro primario intervino indebidamente en sus funciones ministeriales y que erró al determinar que éste no tenía facultad fiscalizadora e investigativa y al conceder los remedios de *injunction* y *sentencia declaratoria*. A dicha solicitud, los alcaldes de Culebra y Villalba, Hons. William Solís Bermúdez y Luis Javier Hernández Ortiz, se opusieron.

**Examinados los alegatos de ambas partes, el foro apelativo intermedio revocó la determinación del Tribunal de Primera Instancia y desestimó las demandas por entender que éste no poseía jurisdicción para atender las mismas ya que los Alcaldes carecían de legitimación activa para incoar el presente litigio. Ello porque, a su juicio, el procedimiento disciplinario ante la UPAD se trataba de una etapa meramente investigativa y no adjudicativa.**

Insatisfechos con la determinación del foro apelativo intermedio, los alcaldes de Culebra y Villalba, Hons. William Solís Bermúdez y Luis Javier

Hernández Ortiz, acuden ante nos. Argumentan que el Tribunal de Apelaciones erró al determinar que éstos carecían de legitimación activa para impugnar el procedimiento disciplinario ante la UPAD y al concluir, implícitamente, que la UPAD ostenta capacidad investigativa. Les asiste la razón. Veamos por qué.

II.

Como es sabido, mediante la Ley Núm. 2 de 23 de febrero de 1988, 3 LPRA sec. 99h *et seq.*, se creó la Oficina del Panel sobre el Fiscal Especial Independiente con el fin de promover y preservar la integridad de los funcionarios e instituciones públicas del gobierno. No obstante, en su versión original, dicha ley no contemplaba la facultad de suspender o destituir a funcionarios como los aquí en controversia, entiéndase los alcaldes u otros funcionarios municipales.

Aprobada la Ley Núm. 182-2009 -- conocida como Ley de reorganización y modernización de la Rama Ejecutiva -- se adoptó el Plan de Reorganización 1-2012, el cual transfirió al Panel las facultades, funciones y deberes que ejercía la Comisión para Ventilar Querellas Municipales sobre los alcaldes y otros funcionarios municipales. Dicha Comisión era el cuerpo con jurisdicción para atender las querellas contra cualquier alcalde o funcionario municipal y tenía la autoridad para suspender o destituir a éstos de probarse los hechos alegados en las querellas que le fueran presentadas. Al respecto, el derogado Art. 18.002 de la *Ley de Municipios*

*Autónomos*, Ley Núm. 81-1991, establecía que las facultades de la referida Comisión se limitaban a entender y resolver las querellas o cargos formulados contra cualquier alcalde.[3]

Posteriormente -- y para atender todo lo relacionado a la adjudicación de las querellas en contra de los alcaldes o funcionarios municipales que le fueran referidas -- se enmendó la ley habilitadora del Panel con el propósito de crear la UPAD. El Art. 14 de dicha ley expresa que la UPAD tiene a su cargo el deber de recomendar al Panel el curso de acción a seguir en torno a los procesos disciplinarios en contra de los alcaldes, en tres (3) escenarios distintos, a saber: (1) cuando se encuentre causa para arresto por delito grave y los delitos contra la función pública y el erario; o delito menos grave que implique depravación moral en contra de un alcalde; (2) cuando recaiga sobre un alcalde una convicción por dichos delitos; y (3) cuando el Panel

---

[3] El derogado Art. 18.002 de la Ley de Municipios Autónomos expresaba:

Facultades de la Comisión:
- a) Entender y resolver las querellas o cargos formulados contra cualquier Alcalde por el Gobernador de Puerto Rico, el Director de la Oficina de Ética Gubernamental, la Asamblea o por cualquier persona.

- b) Entender y resolver situaciones de fricción entre la Asamblea y el Alcalde.

- c) Solicitar, a su discreción, al Secretario de Justicia de Puerto Rico la asignación de un abogado para representar a un querellante que sea ciudadano particular, previa determinación de que el caso en cuestión es exclusivamente de interés público.

- d) Aprobar, enmendar y derogar los reglamentos de carácter interno para el funcionamiento de la Comisión. 21 LPRA sec. 4852

reciba información que a su juicio constituya causa para investigar si un alcalde ha incurrido en conducta inmoral, actos ilegales que implique abandono inexcusable o negligencia inexcusable que resulte lesiva a los intereses públicos en el desempeño de sus funciones. Art. 14 de la Ley Núm. 23 de febrero de 1988, 3 LPRA sec. 99t-1.

**De una lectura del inciso (c) del mencionado Art. 14, se desprende que, si los intereses públicos así lo ameritan, se iniciará un proceso para determinar si la magnitud de los hechos justifica la suspensión o destitución del alcalde.** Dicho proceso estará a cargo de la UPAD, la cual notificará al Panel sus recomendaciones. Incluso, la referida disposición expresa que el *quantum* de prueba a utilizarse en el proceso disciplinario conducido por la UPAD será el de prueba clara, robusta y convincente.

En esa dirección, el 2 de abril de 2012 se adoptó el *Reglamento de la Unidad de Procesamiento Administrativo Disciplinario*, Reglamento Núm. 8194, Departamento de Estado, 10 de mayo de 2012, con el objetivo de establecer las normas y los procedimientos de presentación, trámite, evaluación, adjudicación, revisión y cumplimiento de los casos que se presenten en torno a un alcalde o funcionario municipal electo. **En particular, el Reglamento dispone, en su Art. 10, que el procedimiento adjudicativo, como norma**

**general, se iniciará con la presentación de una _querella_ ante la UPAD.**[4]

Por otra parte, el Art. 18 del Reglamento describe las responsabilidades del Director de la UPAD o funcionario al cual se le remiten las querellas, investigaciones o casos, como lo sería un **abogado investigador.** Dicho articulado limita las responsabilidades de este funcionario a las siguientes: (1) **evaluar el contenido de la querella y determinar si cumple con lo establecido en el Reglamento y el Plan de Reorganización Núm. 1;** (2) recomendar al Panel el curso de acción a seguir cuando la querella no cumpla con el procedimiento establecido; **(3) referir la querella a un oficial examinador,** cuando así proceda; (4) mantener y preservar los documentos ante esa unidad de trabajo; (5) presentar los informes que le sean requeridos por el Panel o la Presidente; y (6) realizar cualesquiera otras funciones inherentes a su posición.

---

[4] El mencionado Art. 10 del Reglamento dispone:

> El **procedimiento adjudicativo**, como norma general, se iniciará con la presentación de una querella ante la UPAD que pudiera constituir causa suficiente para investigar.
>
> También, podrá iniciarse mediante el referido de los funcionarios autorizados a presentar querellas según dispuesto en este Reglamento, así como, cuando se presente en la UPAD, copia de una determinación de causa para arresto y/o acusación por la comisión de delito, ante el Tribunal de Primera Instancia o ante el Tribunal de Distrito Federal o sentencia (s) de cualquiera de dichos tribunales. Asimismo, con el referido o la presentación del resultado de una investigación o con una querella presentada bajo juramento por un ciudadano particular de conformidad con lo dispuesto en el Art. 11 que prosigue. _Reglamento de la Unidad de Procesamiento Administrativo Disciplinario_, Reglamento Núm. 8194, Departamento de Estado, 10 de mayo de 2012. (Énfasis suplido)

Mientras, el Art. 19 requiere que cuando el Director o funcionario designado de la UPAD determine que la querella cumple con los requisitos establecidos por el Reglamento se notifique al Panel. Este último designará un oficial examinador quien dirigirá el procedimiento adjudicativo. **Entre las facultades del oficial examinador están: (1) disponer de los asuntos procesales y evidenciarios; (2) expedir citaciones para la comparecencia de testigos; (3) emitir órdenes para la producción de documentos e información y órdenes protectoras; (4) requerir la presentación de cualesquiera documentos, alegatos o memorandos que estime pertinentes; y (5) presentar al Panel su informe con la recomendación.** Entiéndase, autorizar lo relacionado al descubrimiento de prueba y el manejo del procedimiento disciplinario adjudicativo en contra de los funcionarios de gobierno.

Contrario a lo que algunos pudiesen argumentar, o a lo que alguno de los compañeros jueces que componen este Tribunal pudiese estar intimando, de ningún lugar en el Plan de Reorganización 1-2012 que creó la UPAD, se desprende que el mencionado organismo gubernamental o el Panel tendrían poderes mayores a los que tenía la extinta Comisión para Ventilar Querellas Municipales. Todo lo contrario. **Una lectura detenida y cuidadosa de la mencionada disposición legal revela que las facultades que le fueron transferidas al Panel son idénticas a las que tenía la Comisión para Ventilar**

**Querellas Municipales**. Ello es, **<u>adjudicar</u>** las querellas que le fueran referidas. En este caso, las querellas que le fueron referidas por la Secretaria de Justicia, Hon. Wanda Vázquez Garced, quien realizó la investigación preliminar de los casos que hoy tenemos ante nuestra consideración.

En esa dirección, precisa señalar aquí que de un examen de las facultades de la Comisión -- que fueron transferidas al Panel -- se puede colegir que éstas no incluían el poder de investigar, fiscalizar o reglamentar a los alcaldes o funcionarios municipales. Ello, pues -- según ya mencionamos -- la Comisión no tenía la facultad para actuar como agencia querellante, sino que su autoridad estaba limitada a adjudicar las querellas que le fueran referidas.[5]

## III.

De otra parte, y por considerarlo en extremo pertinente para la correcta disposición de la controversia ante nos, conviene recordar aquí, a grandes rasgos, lo reiteradamente dispuesto por este Tribunal en torno a las doctrinas de legitimación activa y debido proceso de ley.

---

[5] Al seguir esta línea interpretativa no se priva al Panel del FEI de sus poderes investigativos. El Panel del FEI conserva esos poderes en aquellos escenarios en que así haya sido delegado por ley. Como hemos podido apreciar, tal no es el caso de los procedimientos disciplinarios en contra de los alcaldes u otros funcionarios municipales, donde -- por disposición del Plan de Reorganización 1-2012 que creó la Unidad de Procesamiento Administrativo Disciplinario (UPAD) -- dicha dependencia gubernamental tiene los mismos poderes que tenía la extinta Comisión para Ventilar Querellas Municipales. **Ni más poderes, ni menos poderes. Los mismos.**

Respecto a la primera de esas doctrinas, hemos sentenciado que una parte posee legitimación activa para incoar un procedimiento judicial si cumple con los siguientes requisitos: (1) que ha sufrido un daño claro y palpable; (2) que el daño es real, inmediato y preciso y no abstracto o hipotético; (3) que existe conexión entre el daño sufrido y la causa de acción ejercitada; y (4) que la causa de acción surge bajo el palio de la Constitución o de una ley. *Mun. de Fajardo v. Srio. de Justicia*, 187 DPR 245 (2012); *Lozada Tirado v. Testigos de Jehová*, 177 DPR 893, 924(2010); *Hernández Torres v. Hernández Colón*, 129 DPR 824, 835 (1992).

Mientras que, en virtud del debido proceso de ley, en su vertiente procesal, hemos establecido que el Estado está obligado a garantizar que la interferencia con los intereses de libertad y propiedad del individuo se hará mediante un procedimiento justo y equitativo. Para satisfacer dicha exigencia, todo procedimiento adjudicativo debe cumplir con los siguientes requisitos: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de un abogado; y (6) que la decisión se base en el récord. *Com. PNP v. CEE,* 196 DPR 706, 713 (2016); *Díaz Carrasquillo v. García Padilla,* 191 DPR 97 (2014); *R & G v. Sustache,* 163 DPR 491 (2004). Ello incluye, claro

está, los procedimientos adjudicativos ante las agencias administrativas.

Es, precisamente, a la luz de la normativa antes expuesta que procedemos a examinar el proceso disciplinario adjudicativo que hoy nos ocupa.

### IV.

De entrada, es menester señalar que en el presente caso, sin lugar a dudas, estamos ante un procedimiento disciplinario que se encuentra en su **etapa adjudicativa** y no en una **etapa investigativa**. Así claramente se desprende de la notificación de **querella** contra el Hon. William Solís Bermúdez, Alcalde de Culebra; así como la notificación enviada al Hon. Luis Javier Hernández Ortiz, Alcalde de Villalba. Incluso, así lo demuestra el Art.10 del Reglamento de la UPAD antes mencionado.[6]

Tratándose de un procedimiento adjudicativo en contra de los referidos Alcaldes, se activaban todas las protecciones del debido proceso de ley. Protecciones que en el presente caso no se observaron.

---

[6] De las notificaciones enviadas por el Panel, tanto al Hon. William Solís Bermúdez, como al Hon. Luis Javier Hernández Ortiz, claramente se desprende que las mismas constituían **la querella** que daría inicio a un procedimiento disciplinario adjudicativo en contra de éstos. Y no es para menos. Lo anterior, como mencionamos anteriormente, es cónsono con lo dispuesto en el Art. 10 del Reglamento de la UPAD, el cual establece que los **procedimientos adjudicativos** ante dicho organismo bien podrán iniciarse mediante referido por parte de los funcionarios autorizados a presentar dichas querellas, así como el referido o la presentación del resultado de una investigación o una querella presentada bajo juramento por un ciudadano en particular. Es decir, incluso cuando se tratase solamente de información que da base a posibles cargos disciplinarios, y no una querella -- lo cual no es el caso ante nos --, el Reglamento dispone expresamente que ello también podrá iniciar el procedimiento disciplinario adjudicativo.

Como ya mencionamos, el abogado investigador al cual se le refirieron ambas querellas emitió órdenes de citación y de producción de documentos de manera *ex parte* sin referir las mismas a un oficial examinador, lo cual -- conforme al Reglamento de la UPAD -- venía obligado a hacer. Dicho funcionario no tenía facultad en ley para, como lo hizo, emitir órdenes de citación y de producción de documentos de manera *ex parte*. Ello correspondía exclusivamente al oficial examinador.

Siendo ello así, **las actuaciones del abogado investigador, como toda la evidencia e información que se haya recopilado, si alguna, constituyeron un acto *ultra vires* y por lo tanto nulo, por excederse de sus funciones, en contravención de su propio reglamento.** Tratándose aquí de un procedimiento adjudicativo, los alcaldes de Culebra y Villalba tenían derecho a que el procedimiento disciplinario en su contra se hiciera conforme lo exige la ley habilitadora de Panel, el Reglamento de la UPAD y las garantías del debido proceso de ley. Al no hacerse así, los Alcaldes en cuestión poseían legitimación activa para impugnar el procedimiento disciplinario adjudicativo en su contra.

Cónsono con lo anterior, la determinación del Tribunal de Apelaciones a los efectos de que éstos no poseían legitimación activa, y por tanto el foro primario carecía de jurisdicción, es claramente errónea. Los procedimientos disciplinarios aquí en controversia fueron unos adjudicativos, -- y no unos meramente

investigativos --, que activaban las garantías del debido proceso de ley.

V.

En fin, y a modo de epílogo, la manera en que se condujeron los procesos disciplinarios adjudicativos aquí en controversia, según fue probado ante el Tribunal de Primera Instancia, nos levantan serias preocupaciones.

Y es que lo allí sucedido -- a todas luces -- parece ser contrario al debido proceso de ley que les asiste a los señores alcaldes de Culebra y Villalba, Hon. William Solís Bermúdez y Hon. Luis Javier Hernández Ortiz, quienes, por poseer legitimación activa para ello, deben y tienen la facultad para impugnar el mismo. De ahí la necesidad de acoger tanto la *Moción solicitando orden de paralización en auxilio de jurisdicción*, como la *Petición de certiorari* presentadas por éstos.

Por no ser ese el curso de acción seguido por una mayoría de este Tribunal en el día de hoy, como ya adelantamos, enérgicamente disentimos.


                                        Ángel Colón Pérez
                                          Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

William I. Solís Bermúdez,
Alcalde de Culebra

          Peticionario

              v.

Oficina del Panel sobre el
Fiscal Especial Independiente

          Recurrido

_____

Luis Javier Hernández Ortiz,
Alcalde de Villalba

          Peticionario

              v.

Oficina del Panel sobre el
Fiscal Especial Independiente

          Recurrido

**Núm.** CC-2019-0035

Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 24 de enero de 2019.

Estoy conforme con el Voto particular disidente suscrito por el Juez Asociado señor Colón Pérez por cuanto en éste se recoge minuciosamente el historial de la Oficina del Panel del Fiscal Independiente (FEI), la antigua Comisión para Ventilar Querellas Municipales (Comisión) y cómo ambas instituciones han operado en el pasado y cómo deberían interactuar ahora, bajo el nuevo marco legal que tuvo como resultado la eliminación de la Comisión y la transferencia de sus facultades a la Oficina del FEI.

Ello no obstante, escribo estas breves líneas para señalar que mi experiencia pasada como Secretaria de Justicia y Procuradora General, cuando trabajé innumerables referidos a la Oficina del FEI pero más importante, a la antigua Comisión, me permiten aseverar sin reservas, que las facultades investigativas que se arroga el FEI, no tan sólo carecen de base o fundamento en el andamiaje legal presente según se detalla en el Voto particular disidente, sino que la Comisión para Ventilar Querellas Municipales **nunca tuvo esas facultades** y solo se limitaba a ser un ente adjudicativo. Por lo tanto, históricamente también, la interpretación acomodaticia de la Oficina del FEI no se sostiene. Lo cierto es, que era el Ejecutivo quien investigaba los hechos y, de entenderlo procedente, formulaba la querella y la sometía a la Comisión -con la prueba necesaria, así como los memorandos de derecho correspondiente- para que allí se celebrara la vista adjudicativa y se adjudicara la querella presentada.

Las pretensiones de la Oficina del FEI, avaladas desgraciadamente por una mayoría de los miembros de este Tribunal, tergiversan nuestro ordenamiento legal y peligrosamente le confieren unos poderes a un organismo cuya viabilidad futura se discute en nuestro País. El proceder de la Oficina del FEI de iniciar un procedimiento investigativo se asemeja más a los llamados *kangaroo courts* que, a un proceso serio, digno de una agencia encargada de

velar por los intereses de todos, incluyendo de los "investigados".



Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| William I. Solís Bermúdez, Alcalde de Culebra<br><br>Peticionario<br><br>v.<br><br>Oficina del Panel sobre el Fiscal Independiente<br><br>Recurrido<br><br>_____<br><br>Luis Javier Hernández Ortiz, Alcalde de Villalba<br><br>Peticionario<br><br>v.<br><br>Oficina del Panel sobre el Fiscal Independiente<br><br>Recurrido | CC-2019-0035 |

**Voto Particular Disidente emitido por el Juez Asociado señor RIVERA GARCÍA.**

En San Juan, Puerto Rico, a 24 de enero de 2019.

¿Nuestro Poder Legislativo, a través del inciso (c) del 3 LPRA sec. 99t-1, facultó al Panel sobre el Fiscal Especial Independiente (PFEI) para encaminar, *motu proprio*, una investigación a fin de llevar a cabo un procedimiento disciplinario para suspender o destituir a un alcalde o una alcaldesa? ¿El informe que rinde la Secretaria o el Secretario de Justicia, al referir al PFEI una presunta conducta delictiva, es suficiente para activar el quehacer

investigativo de la Unidad de Procesamiento Administrativo Disciplinario (UPAD) conforme al 3 LPRA sec. 99t-1(c)?

Es mi criterio que este foro judicial debió pronunciarse para contestar estas interrogantes, cuya trascendencia es innegable, y así pautar una norma clara en cuanto al procedimiento administrativo que ha de conducir la UPAD, y que el legislador erigió en aquellas circunstancias contempladas en el 3 LPRA sec. 99t-1(c). En lo pertinente para este caso, el estatuto en disputa establece lo siguiente:

> (1) Se crea la [UPAD] [...] adscrita a la Oficina del Panel sobre el Fiscal Especial Independiente. El Panel designará o contratará, a su entera discreción, el personal de la UPAD que sea necesario para llevar a cabo las funciones que establecen en las secs. 99h a 99aa de este título. La UPAD tendrá a su cargo el deber de recomendar al Panel el curso de acción a seguir en torno a procesos disciplinarios contra Alcaldes y Alcaldesas, en cualquiera de los siguientes escenarios:
>
> . . . . . . . .
>
> (c) **Cuando el Panel reciba información, bajo juramento,** que a su juicio constituya causa suficiente para investigar si un alcalde o alcaldesa ha incurrido en conducta inmoral, actos ilegales que impliquen abandono inexcusable, negligencia inexcusable que resulte lesiva a los mejores intereses públicos en el desempeño de sus funciones, según dichos términos son definidos en este Plan, **iniciará un <u>proceso</u> para determinar si la magnitud de los hechos justifican la suspensión o destitución del alcalde o alcaldesa. La celebración del proceso estará a cargo de la UPAD la cual deberá notificar al Panel un informe con sus recomendaciones.**
> Si de la investigación realizada el Panel determina que en efecto el alcalde o alcaldesa incurrió en conducta inmoral, actos ilegales que impliquen abandono inexcusable, negligencia inexcusable que resulte lesiva a los mejores intereses públicos en el desempeño de sus funciones, emitirá una resolución suspendiéndolo o destituyéndolo del cargo. (Énfasis suplido).

Una Mayoría de mis compañeros decidió no aclarar si el PFEI puede ordenar el inicio del proceso disciplinario al que el inciso (c) de la sección citada hace referencia. Ello, tras un referido de la Secretaria de Justicia. La negativa de expresarnos sobre esta controversia tiene el efecto de permitirle al PFEI interpretar cómo y cuándo debe comenzar un procedimiento disciplinario contra un alcalde o alcaldesa en esos casos. Particularmente, cuando la ausencia de una normativa clara podría dar margen a que se interprete la disposición aludida de forma inconsistente y en contravención a las exigencias del mandato legislativo. Lamentablemente, perdimos la oportunidad de pronunciarnos sobre un asunto revestido de alto interés público, como es la destitución mediante un procedimiento administrativo de un alcalde o alcaldesa electo a través de un proceso democrático.

Por estas razones, disiento enérgicamente del curso de acción tomado por la mayoría del Tribunal.


                                        Edgardo Rivera García
                                        Juez Asociado